UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED

JUL 8 - 2008

AT 8:30 _____ 11:30 ___M
WILLIAM T. WALSH, CLERK

| | |
|---|---|
| DOCTOR'S ASSOCIATES INC. | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 08-3363 (WJM) |
| | ) |
| Vs. | ) Judge: _____ |
| | ) |
| JESAL DESAI a/k/a JESAL A. PATWARI, SHAPAT, INC., SHAPAT II, LLC, SHAPAT III, LLC AND PATWARI, LLC | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
ORDER TO SHOW CAUSE FOR A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Forrest S. Turkish, Esq. (9080)
Law Office of
Forrest Scott Turkish
595 Broadway
Bayonne, New Jersey 07002
(201) 339-8866
Email: FSTurkish@aol.com

Attorneys for Plaintiff

# TABLE OF CONTENTS

TABLE OF AUTHORITIEIS ...................................... ii

INTRODUCTION          ...................................... 1

STATEMENT OF FACTS ........................................ 3

    The Franchise Agreement ............................. 4

    Termination of the Franchise Agreement ................ 6

    Defendant's Unauthorized Use of the Subway® Marks ..... 8

ARGUMENT .................................................. 10

    I.    The Legal Standard for a Temporary Restraining
        Order and a Preliminary Injunction ............... 10

        A.    Plaintiff has a Strong Likelihood of
            Success on the Merits ....................... 13

        B.    Plaintiff will suffer Irreparable Harm
            if Injunctive Relief is Not Granted ......... 22

        C.    Defendants Will Not Suffer Greater Harm
            Than Plaintiff If the Injunction Is
            Granted .................................... 29

        D.    Issuing the Injunction Will Serve The
            Public Interest ............................ 35

CONCLUSION ................................................ 39

i

## TABLE OF AUTHORITIES

**CASES**

A&H Sportswear, Inc., v. Victoria's Secret Stores, Inc.,
237 F.3d. 198 (3d Cir. 2000) .......................... 14,15,16
. .................................................... 17,18

Accord United States Jaycees v. Philadelphia Jaycees,
639 F.2d 134 (3d Cir. 1981) .......................... 12, 20

Allegheny Energy, Inc. v. DQE, Inc.,
171 F.3d 153 (3d Cir. 1999) .......................... 11

Ambassador East, Inc. v. Orsatti, Inc.,
257 F.2d 79 (3d Cir. 1958) .......................... 23,24

American Steel Foundries v. Robertson,
269 U.S. 372, 70 L.Ed. 317, 46 S. Ct. 160 (1925) ...... 15

Apple Computer, Inc. v. Franklin Computer Corp.,
714 F.2d 1240 (3d Cir. 1983). ........................ 32

Bieros v. Nicola,
857 F.Supp. 445 (E.D.Pa. 1994); ...................... 11

Burger King v. Austin,Bus.Fran.Guide (CCH)
p.9788 at 22,069 (S.D. Fla. 1990). ...................19,20,21,31

Burger King Corp., v. Hall,
770 F.Supp. 633, Bus.Fran.Guide (CCH)
p.9840 at 22,322-23 (S.D.Fla. May 21, 1991) .......... 21

Burger King Corp., v. Lee, 766 F.Supp. 1149
(S.D.Fla. 1991) ...................................... 21

Checkpoint Sys., Inc. v. Check Point Software
Techs., Inc., 269 F.3d 270 (3d Cir. 2001). .......... 17,21

Church of Scientology Int'l v. Elmira Mission
of the Church of Scientology,
794 F.2d 38 (2d Cir. 1986) .......................... 25,38

Clear Ocean Action v. York,
57 F.3d 328 (3d Cir. 1995) .......................... 11

Constructors Association of Western Pa. v. Kreps,
573 F.2d 811 (3d Cir. 1978).  ........................  11

Crissman v. Dover Down Entertainment, Inc.
239 F.3d 357 (3d Cir. 2001) .........................  13

Eagle Snacks, Inc. v. Nabisco Brands, Inc.,
625 F.Supp. 571 (D.N.J. 1985) .......................  15

ECRI v. McGraw-Hill, Inc.,
809 F.2d 223 (3d Cir. 1987). ........................  30

Fisons Horticulure, Inc. v. Vigoro Indus., Inc.,
30 F.3d 466 (3d Cir. 1944). .........................  17

Fotomat Corp., v. Photo Drive-Thru, Inc.,
425 F.Supp. 693 ....................................  24,27

General Mills, Inc. v. Kellogg Co.,
824 F.2d 622 (8th Cir. 1987) .........................  25

Guiness & Sons v. Sterling Pub. Co., Inc.,
732 F.2d 1095 (2d Cir. 1984) ........................  35

Hasbro, Inc. v. Lanard Toys, Ltd.,
858 F.2d 70 (2d Cir. 1988) ..........................  25

International Kennel Club, Inc. v. Mighty Star, Inc.,
846 F.2d 1079 (7th Cir. 1988) ........................  25,26,36

Interpace Corp. v. Lapp, Inc.,
721 F.2d 460 (3d Cir. 1983). ........................  15,16,18

KOS Pharmaceuticals, Inc. v. ANDRYX Corp.,
369 F.3d. 700 (3d Cir. 2004) ........................  11,12,15,
.................................................  17,21,22,
.................................................  23,30,31,
.................................................  32

Manufacturer Direct, LLC, 2006 Wl 319254, ............  34

McNeil Laboratories, Inc. v. American Home
Products Corp., 416 F.Supp. 804 (D.N.J. 1976) ........  27,37

Norton v. Beyer,
822 F.2d 364 (3d Cir. 1987) .........................  22

Novartis Consumer Health, Inc., v. Johnson &
Johnson-Merck Consumer Pharms. Co.,
290 F.3d 578 (3d Cir. 2002) ..........................    31

Opticians Ass'n of America v. Independent
Opticians of America, 920 F.2d 187
(3d Cir. 1990). ..................................... 12,13,20,
.................................................... 22,23,24,
.................................................... 25,26,28,
.................................................... 29,30,31,
.................................................... 33,34,35,
....................................................  36,37

Pappan Enters., Inc. v. Hardee's Food
Systems, Inc., 143 F.3d 800 (3d Cir. 1998) ............ 11,19,23,
.................................................... 24,25,26,
.................................................... 28,32,33,
.................................................... 34,35,36,
....................................................  38

Processed Plastic Co. v. Warner Communications, Inc.,
657 F.2d 852 (7th Cir. 1982) ..........................    24

Pedi-Care, Inc. v. Pedi-A-Care Nursing, Inc.,
656 F.Supp. 457 (D.N.J. 1987) .........................    23,24

Punnett v. Carter,
621 F.2d 578 (3d Cir. 1980) ...........................    13

Purcell v. Summers,
145 F.2d 979 (4th Cir. 1944).  ........................    28

Sampson v. Murray, 415 U.S. 61, 39 L. Ed. 2d
166, 94 S.Ct. 937 (1974) ..............................    30

SK&F Co. v. Premo Pharmaceutical Laboratories,
625 F.2d 1055 (3d Cir. 1980) ..........................    36

S&R Corporation v. Jiffy Lube Intern., Inc.,
968 F.2d 371 (3d Cir. 1992) ........................... 11,18,19,
.................................................... 20,21,23,
.................................................... 26,28,29,
.................................................... 31,36,38

Times Mirror Magazines, Inc., v. Las Vegas Sport
News, LLC, 212 F.3d 157 (3d Cir. 2000) ...............    23

Transfer Print Foils, Inc. v. Transfer Print
America, Inc., 720 F.Supp. 425(3d Cir. 1989),  ........   15

Virginia Petroleum Jobbers Ass'n v. FPC,
104 U.S. App.D.C. 106, 259 F.2d
921 (D.C. Cir. 1958). ...............................   30

Yale Elec. Corp. v. Robertson,
26 F.2d 972 (2d Cir. 1928) ..........................   23

## RULES

Federal Rules of Civil Procedure, Rule 65 ............   11

## STATUTES

15 U.S.C. §1051 ....................................13,18,27

15 U.S.C. §1114 ....................................   14

15 U.S.C. §1125 ....................................13,14,27

## TREATISES

5 J. Thomas McCarthy, McCarthy on Trademarks
and Unfair Competition (4th ed. 2003).  .............   12,21

11 Williston, A Treatise on The Law of Contracts
(3rd Ed. 1968) .....................................   19

Plaintiff Doctor's Associates Inc., hereby submits the following Memorandum of Law in support of its Order to Show Cause for a Temporary Restraining Order and Preliminary Injunction against Defendants, Jesal Desai a/k/a Jesal A. Patwari, Shapat, Inc., Shapat II, LLC, Shapat III, LLC and Patwari, LLC, prohibiting the Defendants from the continued deliberate and willful infringement of Plaintiff' **Subway®** trademarks.  For the reasons set forth below, the court should grant the temporary restraining order and enter the requested injunctive relief.

**INTRODUCTION**

Defendant, Jesal Desai a/k/a Jesal A. Patwari (hereinafter "**DESAI**") entered into a four (4) separate Franchise Agreements with Plaintiff Doctor's Associates Inc. ("Doctor's Associates") pursuant to which **DESAI** was to operate four (4) separate **Subway®** restaurant franchises at specific locations and was licensed to use the **Subway®** trademarks at those locations.  The four stores were located at 595 Bloomfield Avenue, Bloomfield, New Jersey (store #15953), 49 Claremont Avenue, Montclair, NJ (store #27800), 121 Bloomfield Avenue, Bloomfield, NJ (store #40217) and 6901 Bergenline Avenue, Guttenberg, NJ (store #29895). After defaulting on her obligations as to all four (4) stores, **DESAI's** four (4) Franchise Agreements were terminated respectively on

1

November 27, 2006 (store #15953), March 8, 2006 (store #27800), December 4, 2006 (store #29895) and April 15, 2007 (store #40217). However, even after termination, **DESAI** continued to use the **Subway**® trademarks in connection with all her four (4) restaurant businesses located in New Jersey, as set forth above. This unlawful use of the **Subway**® trademarks and ongoing deception of the public, leaves the mistaken impression that **DESAI** is still an authorized Subway® restaurant franchisee and that her four (4) restaurants are affiliated with Doctor's Associates in violation of the Lanham Act and New Jersey State law.

**DESAI's** unlawful use infringes upon the Subway® trademarks and causes Doctor's Associates irreparable harm. Only a preliminary injunction will ensure that **DESAI** ceases her ongoing infringement and the irreparable harm to Doctor's Associates being caused by **DESAI''s** infringement and the resulting dilution of the **Subway**® trademarks and damage to Doctor's Associates' goodwill and business reputation.

**DESAI** uses various operating entities, although not licensed franchisees, to operate **DESAI'S** four (4) **Subway**® franchises, with all funds going through these operating entities. Each of **DESAI's** four (4) **Subway**® restaurants franchises has a different operating entity used by her, namely the remaining four (4) Defendants, Shapat, Inc., Shapat II, LLC,

2

Shapat III, LLC and Patwari, LLC (hereinafter collectively "**THE OPERATING ENTITIES**"). The relief requested as to **DESAI** is also requested as to the **THE OPERATING ENTITIES** or anyone else acting in concert with **DESAI** or **THE OPERATING ENTITIES.**

## STATEMENT OF FACTS

Plaintiff, Doctor's Associates, Inc. is the owner of a proprietary franchise system for establishing and operating restaurants featuring sandwiches and salads under the famous **Subway**® mark. See Certification of Tricia Lee (hereinafter "Lee Cert."), ¶2. **Subway**® is the world's largest submarine sandwich chain with more than 29,000 restaurants in 86 countries. In 2008, the **Subway**® chain entered its 43rd year of operation. _Id_. at ¶3. Over the past 40 years, countless awards and accolades have been bestowed upon the **Subway**® chain, and the **Subway**® mark and its products have even appeared in numerous television and motion picture productions. _Id_. at ¶4. Defendant, **DESAI,** is an individual residing in the State of New Jersey.

In association with its **Subway**® franchise system, Doctor's Associates' owns numerous trademarks, service marks and logos ("the **Subway**® Marks") that are registered on the principal register of the United States Patent and Trademark Office.[1] _Id_.

---

[1] Doctor's Associates also owns a number of trademark applications that are currently pending before the United States Patent and Trademark Office. _See_,

at ¶5, Ex. A.  Doctor's Associates has the exclusive right to use and license the **Subway**® Marks and derivations thereof, as well as the distinctive **Subway**® System, which includes the **Subway**® Marks, goodwill associated with the **Subway**® Marks, trade dress, recipes, formulas, food preparation procedures, business methods, forms, policies, trade secrets, knowledge, techniques and developments. *Id.* at ¶6.  Therefore, in order to identify the origin of their restaurant services, Doctor's Associates provides its franchisees a limited, non-exclusive license to use the **Subway**® Marks. *Id.* at ¶6.

## The Franchise Agreement

Defendant, **DESAI** entered into four (4) separate Franchise Agreements with Doctor's Associates on June 27, 2002, November 20, 2002, May 3, 2006 and May 18, 2006, respectively for the operation of four (4) **Subway**® restaurant franchises to be located at 595 Bloomfield Avenue, Bloomfield NJ (store #15953), 49 Claremont Avenue, Montclair, NJ (store #27800), 121 Bloomfield Avenue, Bloomfield, NJ (store #40217) and 6901 Bergenline Avenue, Guttenberg, NJ (store #29895) (hereinafter collectively, the "Franchise Agreements").  Lee Cert.  ¶7, Exs. B, C, D and E.  Pursuant to the Franchise Agreements, Defendant,

---

Lee Cert., Ex. "A" for a complete schedule of Doctor's Associates' registered trademarks and pending applications.

**DESAI,** was to operate the four (4) **Subway**® restaurants, respectively, for twenty (20) years from the date of the Franchise Agreements, respectively, subject to earlier termination. _Id_. at Exs. B, C, D and E, ¶7.

During this period, Defendant, **DESAI,** was licensed to use the **Subway**® Marks in association with the operation of the respective specific franchises. _Id_. at Exs. B, C, D and E, ¶5. Under the terms of the Franchise Agreements, **DESAI** is required to pay Doctor's Associates an eight percent (8%) royalty fee, plus a three and one-half percent (3½ %) Subway Franchisee Advertising Fund Trust ("SFAFT") contribution[2], based on each of the respective **Subway**® franchise's gross sales. Lee Cert. ¶¶6-8 at Exs. B, C, D and E, ¶¶2, 5.i, 14. Each of the Franchise Agreements further specified Defendant, **DESAI's** obligations in the event of the termination of any of the Franchise Agreements. _Id_. at ¶12, Exs. B, C, D and E, ¶8.

Specifically, Paragraph 8.e of the Franchise Agreements expressly state that upon termination of the agreement, **DESAI,** must change the appearance of the respective restaurant so it will no longer be identified as a **Subway**® franchise restaurant, and **DESAI** must stop using the **Subway**® System, including all use of the **Subway**® Marks. _Id_. at ¶12, Exs. B, C, D and E, ¶8.e.

---

[2] Increased to four and one-half percent(4½ %) on the two Franchise Agreements signed in 2006 which also amend the prior two (2) Franchise Agreements in that regard

**DESAI** further agreed that in the case of such a breach, Doctor's Associates may bring an action in any court having jurisdiction, and may seek damages, injunctive relief, or both. *Id*. See also Exs. B, C, D, and E, ¶10.d.

## Termination of the Franchise Agreement

Defendant, **DESAI,** committed numerous defaults with regard to all four (4) of her respective **Subway®** restaurant franchises, including but not limited to payment of royalties and advertising fees pursuant to the Franchise Agreements. Doctor's Associates sent **DESAI** four (4) separate notices of default as to the monetary issues on February 26, 2007 (store #27800 at 49 Claremont Avenue, Montclair, NJ), November 24, 2006 (store #29895 at 6901 Bergenline Avenue, Guttenberg, NJ), November 17, 2006 (store #15953 at 595 Bloomfield Avenue, Bloomfield, NJ) and April 5, 2007 (store #40217 at 121 Bloomfield Avenue, Bloomfield, NJ),pursuant to paragraph 8.a of the Franchise Agreements. Additional Notices were sent regarding nonmonetary issues. Lee Cert. ¶¶9, 10, 11, Exs. F and G. All separate Notices of Default set forth the specific provisions of the respective Franchise Agreements with which Defendant, **DESAI,** had failed to comply, namely, Paragraph 2 (agreement to pay Doctor's Associates an eight percent royalty weekly on gross sales) and Paragraph 5.i (agreement to pay four and one-half percent of

6

gross sales to the SFAFT) or specific areas of noncompliance such as cleanliness, etc.. *Id*. at Exs. F and G.  At the time of the Notices, Defendant, **DESAI,** owed royalties and advertising on the respective stores in the amounts of $2,314.99 (store #27800), $1,776.06 (store #29895), $1,787.66 (store #15953) and $2,271.94 (store #40217).  As of June 24, 2008, Defendant, **DESAI,** owed Doctor's Associates over $240,000 in past due royalty and advertising payments as a result of Doctor's Associates' inability to date to remove Defendant from the system.   Further,  Defendant  underreported  gross  sales  as uncovered in an audit.  *Id*. at ¶¶8, 9, 10, Exs. F, G and I.

The respective Notices of Default clearly stated that unless the respective defaults were cured *prior to the tenth (10th) day after **DESAI's** receipt of the notice*, the Franchise Agreements would terminate at that time, respectively (notice dates are February 27, 2007 (store #27800), November 27, 2006 (store #29895), November 20, 2006 (store #15953) and April 6, 2007 (store #40217).  *Id*. at ¶¶9, 10, Exs. F and G.  Doctor's Associates sent all Notices by Federal Express and all of the respective notices were received and signed for by Defendant, **DESAI,** or her employees.  *Id*.  Needless to say, Defendant, **DESAI** failed to cure the respective defaults within ten days, and her Franchise Agreements were terminated on March 9, 2007 (store

#27800), December 7, 2006 (store #29895),  November 30, 2006 (store #15953) and April 16, 2007 (store #40217).  *Id*. at ¶10.

### Defendant's Unauthorized Use of the Subway® Marks

After  the  Franchise  Agreements  were  terminated, respectively, it became apparent that Defendants, **DESAI** and **THE OPERATING COMPANIES,** were continuing to operate the sandwich restaurants at the four (4) aforementioned locations, under the **Subway**® trade name and using the **Subway**® Marks, despite the provision of the Franchise Agreements expressly revoking the trademark license upon termination of the Franchise Agreements, respectively. *Id*. at ¶12, Exs. B, C, D and E ¶8.e.

On April 7, and 8, 2008, Doctor's Associates sent a field investigator,  Heather  Grebla,  to  the  four  (4)  respective locations  to  confirm  that  Defendants  were  still  operating  a sandwich shop, at each of the four (4) locations, under the **Subway**® trade name and to determine the extent of Defendant's unauthorized use of the **Subway**® Marks. *Id*. at ¶13; Certification of Heather Grebla ("Grebla Cert."), ¶3.  At this time, the field investigator  observed  that  the  Defendant  was  operating  her restaurants as if they were still authorized **Subway**® franchises. Grebla Cert., ¶¶4, 5 and 6.

8

Photographs taken during Ms. Grebla's visits are conclusive evidence that Defendant continues to *extensively* use the **Subway®** Marks and operate her restaurant as an authorized **Subway®** franchise in flagrant disregard of Paragraph 8.e of the Franchise Agreements and Doctor's Associates' trademark rights. *Id*. at ¶¶4-6, Exs. A and B.   The list below identifies the **Subway®** Marks that Defendant is believed to be using without authorization and/or infringing upon ("Infringed Marks") as indicated in the photographs taken by Ms. Grebla (*see*, *id*. at ¶5, Ex. A, B):

| U. S. Registration No. | Mark | Class(es) |
|---|---|---|
| 3,013,320 | SUBWAY | 29, 30, 32, 43 |
| 1,174,608 | SUBWAY | 42 |
| 1,307,341 | SUBWAY | 30, 32 |
| 1,524,986 | SUBWAY | 42 |
| 2,591,069 | SUBWAY | 42 |
| 2,678,351 | SUBWAY | 43 |
| 2,678,350 | SUBWAY | 43 |
| 1,737,353 | SUB | 42 |
| 2,732,170 | SUBWAY eat fresh. | 43 |
| 2,567,334 | SUBWAY     EAT FRESH | 42 |
| 3,293,264 | SUBWAY eat fresh. | 43 |

| 1,853,341 | **SANDWICH ARTIST** | 42 |
|-----------|---------------------|--------|
| 1,875,737 | **SANDWICH ARTIST** | 29, 30 |

*See*, Lee Cert., ¶14, Ex H for copies of the registrations for the above-listed trademarks.

Doctor's Associates currently has no control over the quality of goods and services associated with Defendant's restaurants. Lee Cert., ¶15. Doctor's Associates is no longer supplying Defendant or her restaurants with materials or assistance, as it had previously done while Defendant was an authorized franchisee although Doctor's Associates still conducts inspections albeit that Doctor's Associates no longer has any control over the Defendant's stores. *Id.* Therefore, because Defendant is providing goods and services using the Infringed Marks without Doctor's Associates' authorization or quality control standards, Doctor's Associates is being irreparably harmed. *Id.*

## ARGUMENT

### I. Legal Standard for a Temporary Restraining Order and Preliminary Injunction

When ruling on a Motion for Preliminary Injunctive Relief, a District Court must consider four factors: (1) the likelihood that Plaintiff will prevail on the merits at final hearing; (2)

the extent to which Plaintiff is being irreparably harmed by the conduct complained of; (3) whether Defendant will suffer greater harm if the preliminary injunction is issued; and (4) whether the public interest favors granting such relief. KOS Pharmaceuticals, Inc. v. ANDRYX Corp., 369 F.3d. 700, 708 (3d Cir. 2004), citing Allegheny Energy, Inc v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).    See also Pappan Enters., Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 803 (3d Cir. 1998), citing S&R Corporation v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992).

The standards for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical. Bieros v. Nicola, 857 F.Supp. 445, 446 (E.D.Pa. 1994); See also, Clear Ocean Action v. York, 57 F.3d 328, 331 (3d Cir. 1995).   However, these factors merely "structure the inquiry" and no one element will necessarily determine the outcome.   The Court must engage in a delicate balancing of all of the elements, and attempt to minimize the probable harm to legally protected interests between the time of the preliminary injunction to the final hearing on the merits. Constructors Association of Western Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir. 1978).

The third Circuit Court, in KOS Pharmaceuticals, supra, explained:

11

> "One of the goals of the preliminary injunction is to maintain the status quo, defined as the last, peaceable, non-contested status of the parties."

KOS Pharmaceuticals, supra, 369 F.3d at 708, citing Opticians Association of America v. Independent Opticians of America, 920 F.2d 187, 197 (3d Cir. 1990) (citing cases omitted).

> "the status quo to be preserved is not the situation of contested rights.… In a trademark case, (it) is the situation prior to the time the junior user began use of its contested mark: the last peaceable, non-contested status."

Id. at 708, citing 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §30:50 (4th ed. 2003).

Additionally, there is a "compelling need" for preliminary injunctive relief in cases involving unauthorized trademark use by a former franchisee because, after the franchise agreement has been terminated and the trademark license revoked, beause

> "there is an increased danger that consumers will be confused and believe that the former [franchisee] is still an authorized representative of the trademark holder."

Opticians Association of America v. Independent Opticians of America, 920 F.2d at 195, citing Accord United Sttes Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 142 (3d Cir. 1981). Where the likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest. Opticians, supra, 920 F.2d at 197-198. Also discussed infra.

12

Thus, when unlawful use and consumer confusion have been demonstrated in the franchising or licensing context, a finding of irreparable harm is automatic. Id. at 196

## A. Plaintiff has a strong likelihood of Success on the Merits

The Third Circuit Court has held that the reasonable probability of eventual success on the merits is the final factor to weigh in determining whether to grant a temporary restraining order. Crissman v. Dover Down Entertainment, Inc. 239 F.3d 357, 364 (3d Cir. 2001). In order to satisfy this element,

> "it is not necessary that the moving party's right to a final decision after trial be wholly without doubt; rather the burden is on the party seeking relief to make a prima facia case showing of a reasonable probability that it will prevail on the merits."

Punnett v. Carter, 621 F.2d 578, 583 (3d Cir. 1980).

Doctor's Associates is entitled to injunctive relief under the Lanham Act, 15 U.S.C. §1051, et seq. §43(c) of the Act provides, in pertinent part:

> "Remedies For Dissolution of Famous Marks (1) The owner of a famous mark shall be entitled, subject to the principles of equity, and upon such terms as the Court deems reasonable, to an injunction against another person's commercial use in Commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark,

13

> and to obtain such other relief as provided in
> this subsection."

15 U.S.C. §1125(c).  Defendants, based on the verified facts set
forth above and certified to in the supporting Certification of
Tricia Lee, have violated, committed and also continue to commit
violations of 15 U.S.C. §1114 (infringement) and § 1125(a)
(false designation of origin)  §1114 prohibits the use, without
the consent of the registrant, and provides in pertinent part:

> "use in commerce any reproduction … of a registered
> mark in connection with the sale, offering for sale,
> distribution, or advertising of any goods or services
> on or in connection with which such use is likely to
> cause confusion, or to cause mistake, or deceive."

15 U.S.C. §1114(1)(a).    §1125(a) of the Act provides in
pertinent part,

> "any person who, on or in connection with any goods or
> services, or any container for goods, uses in, or any
> word, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or
> misleading description of fact, or false or misleading
> representation of fact, which (A) is likely to cause
> confusion, or to cause mistake, or to deceive as to
> the affiliation, connection, or association of such
> person, with another person, or as to the origin,
> sponsorship or approval of his or her goods, services,
> or commercial activities by another person, … shall be
> liable in a civil action by any person who believes
> that he or she is or likely to be damaged by such act.

15 U.S.C. §1125(a)(1)(A).

Federal Trade mark infringement, 15 U.S.C. §1114, and
federal unfair competition, 15 U.S.C. §1125(a)(1)(A), are
assessed under identical standards.  A&H Sportswear, Inc., v.

14

Victoria's Secret Stores, Inc., 237 F.3d. 198, 210 (3d Cir. 2000). Further, the elements of these statutory claims and the common law claims for unfair competition and trademark infringement alleged by Plaintiff are the same. The purpose of both is to prevent one person from passing off his goods as the goods of another. Transfer Print Foils, Inc. v. Transfer Print America, Inc., 720 F.Supp. 425, 435 (3d Cir. 1989), citing American Steel Foundries v. Robertson, 269 U.S. 372, 70 L.Ed. 317, 46 S. Ct. 160 (1925), cited in Eagle Snacks, Inc. v. Nabisco Brands, Inc., 625 F.Supp. 571, 579 (D.N.J. 1985).

The Third Circuit Court of Appeals has held that, to prevail on a claim for trademark infringement or unfair competition under the Lanham Act, Plaintiff must show (1) that it is the owner of a valid and legally protectable mark; and (2) that Defendant's use of a similar mark for its goods "causes a likelihood of confusion." KOS Pharmaceuticals, supra, 369 F.3d at 709, citing A&H Sportswear, Inc. v. Victoria Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).

The Third Circuit has adopted a non-exhaustive list of factors to consider in evaluating the likelihood of confusion, commonly referred to as the "Lapp factor." KOS Pharmaceuticals, supra, 369 F.3d at 709, citing Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983). However, these factors were

15

developed for cases involving non-competing products.  <u>Id</u>. at

462. The Courts

> "'need rarely look beyond the mark itself' in cases
> involving competing goods, we recently recognized that
> consideration of the Lapp factors … can be quite
> useful for determining likelihood of confusion even
> when the goods compete directly."

<u>A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d

198, 212 (quoting <u>Interpace Corp. v. Lapp, Inc.</u>, 721 F.2d 460,

462 (3d Cir. 1983).    The factors are:  (1) the degree of

similarity between the owners mark and the alleged infringing

mark; (2) the strength of the owners mark; (3) the price of the

goods and other factors indicative of the care and attention

expected of consumers when making a purchase; (4) the length of

time the Defendant has used the mark without evidence of actual

confusion arising; (5) the intent of the Defendant in adopting

the mark; (6) the evidence of actual confusion; (7) whether the

goods, competing or not competing, are marketed through the same

channels of trade and advertised through the same media; (8) the

extent to which the targets of the parties' sales efforts are

the same; (9) the relationship of the goods in the minds of

consumers, whether because of the near identity of the products,

the similarity of function, or other factors; (10) other facts

suggesting that the consuming public might expect the prior

owner to manufacture both products, or expect the prior owner to

manufacture a product in the Defendants market, or expect that

16

the prior owner is likely to expand into the Defendants market. KOS Pharmaceuticals, supra, 369 F.3d at 709, quoting A&H Sportswear, supra, 237 F.3d at 215.

> "none of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other."

KOS Pharmaceuticals, supra, 369 F.3d at 709, citing Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 280 (3d Cir. 2001). Each factor is "weighed … separately," which "is not to say that all factors must be given equal weight." KOS Pharmaceuticals, supra, 369 F.3d at 709, citing Fisons Horticulure, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 476 & n.11 (3d Cir. 1944).

> "The different factors may properly be accorded different weights depending on the particular factual setting. A District Court should utilize the factors that seem appropriate to a given situation."

A&H Sportswear, supra, 237 F.3d at 215. The Lapp factors are best understood as "tools to guide a qualitative decision." Id. at 216.

As to the Lapp factors, little analysis is necessary. The Mark being infringed upon is (1) Plaintiff's actual Mark or an exact copy thereof; (2) Plaintiff's Mark is extremely strong; (3) Consumers expect a high degree of care and attention as this is a food purchase for personal consumption; (4) There is

17

confusion being caused by Defendant as matter of law; (5) Defendant is intentionally using the Mark without authorization; (6) There is confusion being caused by Defendant as matter of law (7) Defendants goods are competing with Plaintiffs and are marketed by Plaintiff through Plaintiff's channels of trade and advertising media; (8) The targets of the parties' sales efforts are the same; (9) In the minds of consumers, Defendants products will be associated with Plaintiff; (10) Defendant is using the exact Mark to market competing products, and as a former franchisee, is deceiving all customers into thinking Plaintiff is the source of the goods. All Lapp factors point in favor of confusion although, as pointed out in A&H Sportswear, supra, 237 F.3d at 212, quoting Lapp, supra, 721 F.2d at 426, we

> "rarely need look beyond the Mark itself in cases involving competing goods."

Id.

In Jiffy Lube, supra, 968 F.2d 371, a case very similar to the case at bar, defendant Franchisee who had been terminated for failure to pay royalties, made an allegation regarding a pre-termination dispute that the Franchisor first breached the contract. This was held insufficient to prevent the Franchisor Plaintiff from receiving injunctive relief under the Lanham Act, 15 U.S.C. §1051, et seq. Id. at 373-374. The Third Circuit Court explained that "a franchisor's right to terminate a

18

franchisee exists independently of any claims franchisee might have against the franchisor," and that "the franchisor has the power to terminate the relationship where the terms of the Franchise Agreement are violated.    Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act.    Thus, [Plaintiff] will merit preliminary injunctive relief if it can adduce sufficient facts indicating that its termination of (Defendants) franchises were proper."    Id., at 375.

> "Under basic contract principals when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is avoided, or continue its performance and sue for damages.    Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits."

Id. at 375-76, citing Burger King v. Austin, Bus.Fran.Guide (CCH) p.9788 at 22,069 (S.D.Fla. 1990);    See also Pappan, supra, 143 F.3d 800 at 806.

The foregoing is basic contract law.    11 Williston, A Treatise on The Law of Contracts, §1301 at 83, §1355 at 178-179 (3rd Ed. 1968);

The franchisee who feels the franchisor has breached the contract must either continue his performance and sue for partial breach or consider the contract terminated and sue for total breach.    Any alleged breach by the Franchisor does not

entitle the Franchisee to continue rights under the Franchise Agreement after the Franchisee has ceased performance. Continued use of the mark under these circumstances amounts to Trademark Infringement. Id. at 375-376.

> "In order to have preserved their right to recover for the alleged breaches and to continue to use the (Plaintiff's) trademark, Defendants should have continued to pay royalties, advertising expenses and rent."

Id. at 375-376, citing Burger King v. Austin, Bus.Fran.Guide (CCH) p.9788 at 22,069 (S.D. Fla. 1990).

Plaintiff may demonstrate that it is likely to succeed at trial under the Lanham Act, if Defendant **DESAI**'s use of Doctors Associates' valid trademarks is "likely to create confusion concerning the origin of the goods or services." Opticians, supra, 920 F.2d at 192. Time and again, the Third Circuit has held that

> "there is a great likelihood of confusion when an infringer uses the exact trademark. ..."

Opticians, supra, 920 F.2d at 195, citing Accord United States Jaycees v. Philadelphia Jaycees, 639 F.2d at 134 at 142 (3d Cir. 1981). See also Jiffy Lube, supra, 968 F.Supp. at 373-374.

> "Thus likelihood of confusion is inevitable, when, as in this case, the identical mark is used concurrently by unrelated entities."

Opticians, supra, 920 F.2d at 195.

> "cases where a Defendant uses an identical mark on competitive goods hardly ever find their way into the

20

appellate reports.  Such cases are 'open and shut' and
do not involve protracted litigation to determine
liability for trademark infringement."

2 McCarthy, supra, at §23:3.

The Court routinely has recognized that evidence of actual
confusion "is difficult to find … because many instances are
unreported." KOS Pharmaceuticals, supra, 369 F.3d at 720,
citing, Checkpoint Sys., Inc. v. Check Point Software Techs,
Inc., 269 F.3d 270, 291 (3d Cir. 2001).  Without knowing how
many, or what percent of, incidents go unreported, anecdotal
evidence of confusion cannot usefully be compared to the
universe of potential incidents of confusion.  KOS
Pharmaceuticals, supra, at 720.

Injunctive Relief has also been granted by other Courts,
under circumstances almost exactly on point with the case at
bar[3].

As set forth above, and in Plaintiff's Verified Complaint,
as well as in the Lee Cert. and the Grebla Cert, Defendant has
continued to use the **Subway®** trademark without consent, has

---

[3] Burger King Corp., v. Lee, 766 F.Supp. 1149 (S.D.Fla. 1991) (failure to make
royalty payments resulted in termination; post-termination use of trademark
enjoined despite franchisee claims of breach) in Burger King Corp., v. Hall,
770 F.Supp. 633, Bus.Fran.Guide (CCH) p 9840 at 22,322-23 (S.D.Fla. May 21,
1991) (Franchisee failed to pay royalties; post termination use of trademark
enjoined; no indication of whether Defendant had counterclaimed for breach).
In fact, in Hall, the Court reiterated the contract claim in Austin, supra,
that "as a matter of law, … a terminated franchisee's remedy for wrongful
termination is an action for money damages and not the continued unauthorized
use of its franchisor's trademarks." Jiffy Lube, supra, 376-377, citing
Hall, supra, at 22,322.

21

failed to pay royalties and advertising fees but has continued to reap the benefits of using the trademark.

Continued use of Doctors Associates' marks and proprietary systems after termination is undoubtedly going to cause confusion between the products sold by Defendant, and those sold by authorized Franchisees of Doctors Associates.   In short, Doctors Associates owns the marks, the marks are valid, and the likelihood of confusion is an inevitable result of the concurrent use of this mark by Defendant.   Plaintiff therefore has met its burden of a showing of probability of success on the merits.

## B. Plaintiff Will Suffer Irreparable Harm If Injunctive Relief is Not Granted

The next factor the Court must consider before granting Preliminary Injunctive Relief is the extent to which Plaintiff will suffer irreparable harm if Preliminary Injunctive Relief is denied.   "Irreparable harm" must be of a peculiar nature, so that compensation in money alone cannot attone for it. Opticians, supra, 920 F.2d at 195, citing, Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987) Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.   KOS Pharmaceuticals, supra, 369 F.3d at 726,

citing Pappan, supra, 143 F.3d at 805.    Lack of control over
one's mark

> "creates the potential for damage to … reputation
> (,which) constitutes irreparable injury for the
> purpose of granting a preliminary injunction in a
> trademark case."

KOS Pharmaceuticals, supra, 369 F.3d at 726 citing Opticians,

supra, 920 F.2d at 196.    Thus,

> "Trademark infringement amounts to irreparable injury
> as a matter of law."

KOS Pharmaceuticals, supra, 369 F.3d at 726, citing Jiffy Lube

supra, 968 F.2d at 378; See also Times Mirror Magazines, Inc.,

v. Las Vegas Sport News, LLC, 212 F.3d 157, 169 (3d Cir. 2000)

("potential damage to … reputation or goodwill or likely

confusion between parties' marks" is irreparable injury).

Once the likelihood of confusion caused by trademark
infringement has been established, the inescapable conclusion is
that there was also irreparable injury."    Pappan, supra, 143
F.3d at 805.

In Opticians, the Court noted:

"in Ambassador East Inc. v. Orsatti, Inc., 257 F.2d 79
(3d Cir. 1958), we held that a Plaintiff's 'mark is
his authentic seal; by it he vouches for the goods
which bear it; it carries his name for good or ill.
If another uses it, he borrows the owners reputation
whose quality no longer lies within his owners
control.    This is an injury, even though the borrower
does not tarnish it, or divert any sales by its use.
…'    Id. at 82 (quoting Yale Elec. Corp. v. Robertson,
26 F.2d 972, 974 (2d Cir. 1928) (opinion by Judge
Learned Hand)).    See Pedi-Care, Inc. v. Pedi-A-Care

23

Nursing, Inc., 656 F.Supp. at 457 (D.N.J. 1987) (where there is loss of control, "the potential exists that Defendant's use of a (mark) confusingly similar to Plaintiff's … mark will result in damage to Plaintiffs reputation."); Fotomat Corp. v. Photo Drive-Thru, Inc., 425 F.Supp. at 711 (**"Plaintiff's lack of ability to control the nature and quality of services provided under an infringing service mark, even if Defendant matches the high quality of Plaintiff's services, constitutes irreparable injury."**) See also Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982) ("the most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the Defendants' goods. Even if the infringer's products are of high quality, the Plaintiff can properly insist that its reputation should not be imperiled by the actions of another.") (citation omitted)." (**emphasis added**)

Opticians, supra, 920 F.2d at 195-196.

There is no doubt that Defendant, **DESAI**'s infringement has inhibited Doctors Associates' ability to control its own **Subway**® marks, which in turn creates not only the potential for damage to its reputation. Potential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case. Opticians, supra, 920 F.2d at 195-196, citing Ambassador East, Inc. v. Orsatti, Inc., 257 F.2d 79 (3d Cir. 1958). Irreparable injury can also be based upon the possibility of confusion Pappan, supra, 143 F.3d at 805, citing Opticians, supra, 920 F.2d at 196.

The Pappan Court stated emphatically:

"Finally and most importantly for this case, trademark infringement amounts to irreparable injury as a matter of law."

24

A number of courts have stated that where Plaintiff makes a strong showing of likely confusion, irreparable harm is automatic. Opticians, supra, 920 F.2d at 196, citing Church of Scientology Int'l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 41 (2d Cir. 1986) ("establishing a high probability of confusion as to sponsorship almost inevitably establishes irreparable harm."); Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir. 1988) ("a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm …"); International Kennel Club, Inc., v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988) ("damages caused by trademark infringement are by their very nature irreparable") (several citations omitted); (General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) ("since a trademark represents intangible assets such as reputation and good will, a showing of irreparable injury can be satisfied if it appears that (Plaintiff) can demonstrate a likelihood of consumer confusion.") (additional cites omitted).

The New Jersey District Court restated the rule, noting that

> "potential damage which may result from confusion
> between the parties' marks"

The Court in Pappan, found, in a case quite similar to the case at bar (Franchisee was terminated for failure to make

royalty payments), that Plaintiff had clearly suffered irreparable injury to its marks from Pappan's non-consensual use of the trademark and that irreparable injury suffered as a result outweighed any injury the franchisee might have suffered from, the entry of a preliminary injunction. Pappan, supra, 143 F.3d at 804.

In another almost identical case, Jiffy Lube, supra, the Third Circuit Court enjoined use of the Jiffy Lube trademark after the franchisee was terminated for failure to make royalty payments and other violations based primarily on the same irreparable injury analysis. Jiffy Lube, supra, 968 F.2d at 377, citing Opticians, supra, 920 F.2d at 195.

Finally and most importantly, the Third Circuit Court held,

**"trademark infringement amounts to irreparable injury as a matter of law."** (emphasis added).

Jiffy Lube, supra, 968 F.2d at 377 citing Opticians, supra, 920 F.2d at 196, citing International Kennel Club, Inc. v. Mighty Star, Inc., 846 F.2d 1079, 1092 (7th Cir. 1988) (where it was held that **damages "caused by trademark infringement are by their very nature irreparable"**). (emphasis added). The Pappan Court followed this holding as well citing the same cases. Pappan, supra, 143 F.3d at 805 (citing cases omitted).

A Plaintiff who has demonstrated service mark infringement faces a probability of lost trade and an appropriation of its good will. Damages in such cases are by their very irreparable and not susceptible of adequate measurement, and Plaintiffs lack of ability to control the nature and quality of goods provided

under the infringing service mark, <u>even if Plaintiff matches the high quality of Defendant's goods</u>, constitutes an irreparable injury for purposes of judging the right to injunctive relief. <u>Fotomat Corp., v. Photo Drive-Thru, Inc.</u>, 425 F.Supp. 693 (D.N.J. 1977); <u>McNeil Laboratories, Inc. v. American Home Products Corp.</u>, 416 F.Supp. 804 (D.N.J. 1976) citing, Federal Trademark Act of 1946, 15 U.S.C.A. §1051 et seq., 1125(a).

It is obvious that if the Court were to permit the Defendants to market sandwiches using Doctors Associate's trademark or even a mark similar enough to cause confusion, some consumers would buy Defendant's product instead of Doctor's Associates product if they are confused as to the origin of the product and those customers would associate the good will attaching to Plaintiff's **Subway**® name with Defendant, **DESAI's** product.    It would be extraordinarily difficult to translate such a loss of good will into money damages nor would it be a simple task to calculate in damages the value of customers who would be forever lost to Plaintiff if Defendants continued to sell goods of an inferior quality without complying with the quality control standards of Doctor's Associates pursuant to its operations manual.    The potential damage which may result from confusion of customers as to whether the sandwiches and other goods sold by Defendants were made by, endorsed, by or produced with the authority of, and in conformance with, the high

27

standards of Doctor's Associates and its **Subway**® trade name, are deemed to be irreparable injury warranting injunctive relief since the parties reputation and good will will be threatened. Pappan, supra, 143 F.3d at 805; Jiffy Lube, supra, 968 F.2d at 377; Opticians, supra, 920 F.2d at 195-196;

It has been pointed out that "the right to an injunction does not depend upon the right to the use of a name but upon the right to be protected against its unfair use by others." Purcell v. Summers, 145 F.2d 979, 990 (4th Cir. 1944).

When a franchiser's marks are used without authorization by a terminated franchisee, such usage damages the good will of the trademark owner when the public begins to associate the owner's distinctive marks with the non identical goods or services. As a result of this association, the trademark owner loses control over its own good will and reputation and the resulting harm is impossible to calculate, therefore making that harm irreparable. Opticians, supra, 920 F.2d at 195.

At present, Defendant is in debt for royalties and advertising on the four (4) **Subway**® restaurant stores in an amount in excess of $240,000.00. Not only has there been a failure to pay royalties and advertising fees, but in fact Defendant underreported gross sales by almost 25% as confirmed by an audit in the Summer of 2007. In effect, Defendants bought time by committing wire fraud and/or mail fraud. Defendants

obtained further delay when purporting to pay outstanding fees by checks purporting to be certified checks which were in fact fraudulent and dishonored by the Defendants bank.

As a result, Defendants are operating the **Subway**® restaurant franchises in a manner not consistent with the Policy and Procedures Manual of Doctor's Associates in numerous respects, including but not limited to, a failure to comply with the quality standards which are necessary to preserve the strong identity, reputation and good will developed by Doctor's Associates in the **Subway**® name since 1967 and associated with Plaintiff's **Subway**® which is used at over 30,000 franchises and in over 86 countries.

Notwithstanding the foregoing, since Plaintiff is likely to prove at trial that Defendant is infringing its **Subway**® Trademark, Doctors Associates has A fortiori alleged irreparable harm. Jiffy Lube, supra, 968 F.2d at 376-377.

## C. Defendants Will Not Suffer Greater Harm Than Plaintiffs If The Injunction Is Granted

In deciding whether injunctive relief is appropriate, the third task a Trial Court must undertake is to balance the hardships to the respective parties.

> "A basic purpose behind the balance analysis is to ensure that the issuance of an injunction would not harm the infringer **more** than a denial would harm the mark's owner."

29

Opticians, supra, 920 F.2d at 197, citing ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987).

The Courts are next required to decide whether Defendants will suffer irreparable harm if the preliminary injunction is issued, and to what extent.    KOS Pharmaceuticals, supra, 369 F.3d at 727, citing Opticians, supra, 920 F.2d at 192.    If temporary relief would cause irreparable harm to an alleged infringer pending final disposition of the case, the Court should "balance the hardships" to "ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner."    Id. at 727, citing Opticians, supra, at 197.

Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.    Id. at 728, citing Sampson v. Murray, 415 U.S. 61, 90, 39 L. Ed. 2d 166, 94 S.Ct. 937 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. FPC, 104 U.S. App.D.C. 106, 259 F.2d 921, 925 (D.C. Cir. 1958)).

In a number of cases on point with the case at bar, the Courts found that although the Franchisee presented a sympathetic position of loss of the franchise, the Courts overwhelmingly have enjoined use of the trademark after

termination by Plaintiff for failure to pay royalties.    For
instance, the Court in Jiffy Lube, supra, noted:

> "he has brought much of the difficulties of which he
> complains upon himself.    He chose to stop paying
> royalties, for example, See Opticians, supra, 920 F.2d
> at 197 (party 'can hardly claimed to be harmed, since
> it brought any and all difficulties occasioned by the
> issuance of an Injunction upon itself.') in choosing
> to stop his own performance under the contract, he
> effectively terminated the franchise agreement. C.F.
> Austin, supra, p 9788 at 22,070.    (Defendant) is
> certainly harmed by the threat of loss of his
> franchise, but his self inflicted harm is far out
> weighted by the immeasurable damage done Jiffy Lube by
> the infringement of its trademark.    (Defendant) is not
> prevented from seeking damages, but he has not
> established the right to continue to using the
> trademark. Id.,"

Jiffy Lube, supra, 968 F.2d at 378-379.    See also Opticians,
supra, 920 F.2d at 197 (**when the potential harm to each party is
weighed, a party "can hardly claim to be harmed (where) it
brought any and all difficulties occasioned by the issuance of
an injunction upon itself."**) (emphasis added).    These cases are
directly on point with the case at bar.    The Third Circuit often
recognized:

> "The injury a Defendant might suffer if an injunction
> were imposed may be discounted by the fact that the
> Defendant brought the injury upon itself."

KOS Pharmaceuticals, supra, 369 F.3d at 728, citing Novartis
Consumer Health, Inc., v. Johnson & Johnson-Merck Consumer
Pharms. Co., 290 F.3d 578, 596 (3d Cir. 2002).

> "Indeed a different rule would allow 'a knowing
> infringer (that) constructs its business around its

infringement' to avoid an injunction by claiming it
would have a 'devastating effect on that business,' a
result we cannot condone."

Id. at 729, citing Apple Computer, Inc. v. Franklin Computer

Corp., 714 F.2d 1240, 1255 (3d Cir. 1983).

In Pappan, supra, the facts are also exactly on point as
set forth above, and the Court used the exact same reasoning in
issuing the injunction. Pappan, supra, 143 F.3d 805-6. In that
case, Defendant was in arrears as to five (5) restaurants in the
amount of $172,038.70 (as in the present matter where Defendant
is in arrears as four (4) restaurants in excess of $240,000.00.)
Pappan received notices to cure the defaults or that the
franchise agreements would terminate within ten (10) days.
Pappan failed to cure the defaults and Plaintiff terminated the
Franchise Agreements, demanding that Pappan cease use of the Roy
Rogers mark and comply with other post-termination obligations
in the Franchise Agreement. The Court found that Plaintiff,
Hardee's and MRO, clearly demonstrated irreparable injury as a
result of Defendants non-consensual use of the Roy Rogers marks
in the forms of loss of control of reputation and the inevitable
likelihood of confusion to consumers. Pappan, supra, 143 F.3d
at 805. The Court further held that Defendant failed to
demonstrate irreparable injury, which could not be remedied by
money damages, despite that defendant argued it would suffer the
loss of the franchise rights to the Roy Rogers name on its five

32

(5) stores and would suffer the loss of customers' good will if it were forced to convert to a non-affiliated restaurant thereafter. The Court's ruling was primarily based on the fact that Defendant's harm was self inflicted in that Defendant ceased paying royalties thereby terminating the contract, but thereafter continued non-consensual use of the Marks. Id.

The Court also noted that the concept of customer's good will in the context of trademark law is good will for the mark, not for the specific restaurant. Id., citing Opticians, supra, 920 F.2d at 195.

Defendant suffers no hardship from being enjoined from the use of the **Subway®** trademark, etc. and operating sandwich stores in violation of the Franchise Agreements and the Arbitration Awards. Defendant has no entitlement to continue these practices, as set forth above. Defendants' only harm will be not being able to continue to profit by illegally using the **Subway®** trademarks, and damage Doctor's Associates' reputation and goodwill. Defendants can sell sandwiches under any other name and in fact have only been operating two of these businesses for five years and the other two business for less than two years, and quite poorly at that. Defendant, **DESAI,** has built little, if any goodwill and has already caused irreparable harm to Plaintiff since the "last peaceable uncontested status" when Plaintiff had control over Defendant's stores and only

33

licensed franchisees could use the mark.    Opticians, supra, 920 F.2d at 197.

Although loss of a franchisee's livelihood makes a compelling argument, Courts have not always been persuaded by same especially, when balancing the harm to the franchisor.    In Manufacturer Direct, LLC, 2006 Wl 319254, the Court held that the Franchisee could not establish irreparable harm requiring injunctive relief.    In so finding, the Court recognized that the cases cited by the Franchisee to establish irreparable harm when the business vitality is endangered were not comparable to the present facts.    The Court found important the following similar facts.    The franchisee in Pappan had only been in the franchise system approximately four (4) years (and thus was not an established dealer), and it was uncontroverted that the present franchisee wishes to sell the franchise.    In the case at bar, Defendant, **DESAI**, is actively trying to sell two of the four franchises and has indicated that all she was looking for was time to do so.    Further, two of the four stores have only been in the **Subway**® system for approximately five (5) years and the other two for only one to one and a half years.    In contrast, the Court in Manufacturer Direct, LLC, supra, found that the franchisor faces serious harm to its system if the termination was enjoined, including harm to its reputation.

Accordingly, issuing the injunction would restore the precontroversy "last, peaceable, non-contested" status of the parties where the **Subway**® marks could only be used by licensed Doctor's Associates' licensees, who were paying royalties and who were subject to Plaintiff's control. Opticians, supra, 920 F.2d at 197, citing Guiness & Sons v. Sterling Pub. Co., Inc., 732 F.2d 1095, 1099, 1101-1102 (2d Cir. 1984); (other cites omitted).

On balance, even where both parties would suffer equal doses of harm, the Courts will grant an injunction if the harm upon the infringer is no greater than the harm that would be imposed upon Plaintiff by the denial of the injunction. Opticians, supra, 920 F.2d at 197.

Accordingly, it is clear, in the case at bar, that the injunction should be granted as Defendants harm, if any, will not be greater than Plaintiffs, and could be compensated in monetary damages, if any.

### D. Issuing the Injunction Will Serve The Public Interest

In the trademark case, the public interest is most often a synonym for the right of the public not to be deceived or confused. Pappan, supra, 143 F.3d at 807, citing Opticians, supra, 920 F.2d at 197. The District Court in Pappan found that Defendants use of the Roy Rogers mark was likely to create

35

confusion, and that this finding mandated a finding that the public interest would be damaged if Defendant were permitted to continue using the mark. Pappan, supra, 143 F.3d at 807; Jiffy Lube, supra, 968 F.2d at 378, citing Opticians, supra, 920 F.2d at 197 (additional citing case omitted). Where a likelihood of confusion arises out of the concurrent use of a trademark, the infringer's use damages the public interest. Jiffy Lube, supra, 968 F.2d 378, citing Opticians, supra, 920 F.2d at 197-198 (citing case omitted). In this respect, harm to the public interest is much like irreparable injury to the trademark owner. Pappan, supra, 960 F.2d at 378.

> "There is a public interest in the protection of the trademark and to avoid confusion in the public."

Opticians, supra, 920 F.2d at 197-198, citing SK&F, Co. v. Premo Pharmaceutical Laboratories, 625 F.2d 1055, 1057 (3d Cir. 1980) ("preventing deception of the public is itself in the public interest.") See also International Kennel Club, supra, 846 F.2d at 1092 n.8 (the relevant consideration is the consumer's interest in not being deceived).

Having already established that there is a likelihood of consumer confusion created by the Defendant's use of the **Subway**® mars, it follows that if such use continues, the public interest would be damaged. Conversely, a prohibition upon Defendant's use of the Marks would eliminate that confusion. Id. at 198.

Accordingly, Defendant, **DESAI**, who is likely to be found to be an infringer at trial, is thus likely, if not certainly causing confusion among **Subway**® patrons.    Injunctive Relief would therefore be in the public's interest.  Opticians, supra, 920 F.2d at 195-196.

While the Public is surely interested in vigorous competition, the Public is equally interested in Fair competitive practices and clearly opposed to being deceived in the market place.  Accordingly, the "balance of equities" tips strongly in favor of the Plaintiff. Any relatively minimal injury which could be claimed by Defendant, **DESAI**, is more than counter balanced by the danger of irreparable injury to Doctor's Associates were Defendants' **Subway**® activities permitted to continue and to expand.  McNeil Laboratories, Inc., supra, 416 F.Supp. at 809.  Defendants' actions also damage the public and other Franchisees, simply because the public views the **Subway**® trademark in stores bearing it, as a unified business system. See infra.  When one franchisee fails to uphold the Franchisors standards, it threatens the brand and the reputation and goodwill of the franchisees.  This damage or harm, is by its very nature, incapable of precise quantification.

At this point, Subway has no control over Defendants use of the trademark name.  Doctor's Associates, is without any control

37

over Defendants, who are failing to comply with the standards of Doctors' Associates.

A licensee or franchisee who once possessed authorization to use the **Subway**® trademarks becomes associated in the public's mind with the **Subway**® trademark holder. When such a party, as Defendant, **DESAI,** here, loses its authorization but continues to use the mark, the potential for customer confusion is greater than the case of a random infringer, because consumers have already associated some significant source of identification with the licensor. In this way the use of the mark by a former licensee confuses and defrauds the public, not to mention the fact that Defendant **DESAI** is committing this practice at four (4) separate locations, two (2) in Bloomfield, one (1) in Montclair, and one (1) in Guttenberg, New Jersey. Jiffy Lube, supra, 968 F.2d at 378; See also, Church of Scientology Int'l v. Elmira, Mission of the Church of Scientology, 794 F.Supp. 2d 38, 44 (2d Cir. 1988).

Issuance of the Injunction is in the Public interest as the public will no longer be confused and deceived that this is a licensed **Subway**® franchise, and will be permitted to make an informed purchase. Pappan, supra, 143 F.3d at 807.

## CONCLUSION

For the foregoing reasons, Plaintiff, Doctor's Associates Inc., respectfully requests that its application for a temporary Restraining Order and Preliminary Injunctive Relief be granted.

Respectfully submitted,

Dated:   July 3, 2008

_____

Forrest S. Turkish, Esq. (9080)
Law Office of
Forrest Scott Turkish
595 Broadway
Bayonne, New Jersey  07002
(201) 339-8866
Email: FSTurkish@aol.com

Attorneys for Plaintiff

(Forrest/DessiLanhamActInjunction.mml.doc)

39