SUSHEELA VERMA, ESQ. (SV-4472)
LAW OFFICES OF SUSHEELA VERMA
ONE WOODBRIDGE CENTER
SUITE 810
WOODBRIDGE, NJ 07095
732-596-1140 FAX: 732-596-1150
Attorney for the Defendants

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| DOCTOR'S ASSOCIATES INC.<br>Plaintiff,<br><br>vs.<br><br>JESAL DESAI a/k/a JESAL A. PATWARI,<br>SHAPAT, INC., SHAPAT II, LLC,<br>SHAPAT III, LLC AND PATWARI, LLC<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No: 08-3363<br><br>Judge: William J. Martini, U.S.D.J.<br><br>Return Date of Motion: September 15, 2008 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR
RECONSIDERATION OF THE COURT'S ORDER GRANTING PLAINTIFF'S
ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

**Law Office of Susheela Verma**
One Woodbridge Center, Suite 810
Woodbridge, N.J. 07095
732-596-1140, Fax: 732-596-1150
Attorney for Defendants

# TABLE OF CONTENTS

Table of Contents ................................................................................i

Table of Authorities .........................................................................iii

A. Procedural History ........................................................................1

B. Statement of Facts .........................................................................2

C. Standard for Reconsideration ........................................................6

D. The Standard For Injunctive Relief ...............................................8

E. Argument .......................................................................................8

    Point I

    The Defendants' Use of the Plaintiff's Mark Is Authorized and It Is Likely
    That Defendant's Will Prevail On The Merits.......................................8

    Point II

    The Plaintiff Misrepresented that the Defendants Have Not
    Voluntarily Paid Royalties and Cannot Prevail
    on The Merits....................................................................................10

    Point III

    The Defendants Will Suffer Irreparable Harm if a
    Preliminary Injunction is Issued and the Plaintiff will Not Be Harmed
    .........................................................................................................13

    Point IV

    The Plaintiff's Loss of Control over the Defendants'
    Franchises is Self-Inflicted and it is not being Irreparably Harmed ..............14

    Point V

    It is in the Public Interest to Allow the Defendants to Continue to Operate their
    Franchises ..........................................................................................15

    Point VI

    Discovery Will Show that the Defendants Did Not

Under Report Gross Sales, nor Did They Pay Outstanding
Fees with Certified Checks that were Fraudulent .....................................15

Point VI

Plaintiff has Unclean Hands ...............................................................16

F. Conclusion ................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*American Telephone and Telegraph Company v. Winback and Conserve Program, Inc.,*
    42 F.3d 1421, 1427 (3d Cir. 1994) ................................................ 8, 10

*Bowers v. National Collegiate Athletic Association Act, Inc.,*
    130 F. Supp. 2d 610, 613 (D.N.J. 2001) ............................................7

*Castle v. Cohen.,*
    676 F. Supp. 620 (E.D. Pa. 1987), *aff'd in part and vacated in part on other*
    *grounds,* 840 F.2d 173 (3d Cir. 1988) ............................................16

*Constructors Association of Western Pa. v. Kreps,*
    573 F.2d 811, 815 (3d Cir. 1978) ....................................................17

*Daminano v. Sony Music Entertainment, Inc.,*
    975 F. Supp. 623, 634 (D.N.J. 1997) ................................................7

*KOS Pharmaceuticals, Inc. v. Andrx Corporation,*
    369 F.3d 700, 728 (3d Cir. 2004) ...................................................13

*Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc.,*
    143 F.3d 800, 803 (3d Cir. 1998) .....................................................9

*Precision Inst. Mfg. Co. v. Auto Maint. Match Co.,*
    324 U.S. 806 (1945) ........................................................................16

*S. & R. Corporation v. Jiffy Lube International, Inc.,*
    96 F.2d 371 (3d Cir. 1992) .........................................................7,11,16

## Rules

Local Fed. R. Civ. P. 7.1(i) ...............................................................6,8

Fed. R. Civ. P. 65(c) ...........................................................................14

## A.

## PROCEDURAL HISTORY

The defendants are seeking reconsideration of the court's decision to grant the plaintiff a preliminary injunction preventing the defendants from using the plaintiff's marks to conduct their franchised business. The plaintiff and defendants entered into four separate Franchise Agreements. Based upon certain inspections and audits conducted by the plaintiff's representatives, it alleged breach of franchise agreements on part of the defendants. Over the defendants' objections, the plaintiff proceeded to arbitrate the dispute in Connecticut pursuant to the arbitration clause contained in the franchise agreements.

Plaintiff, through its affiliate Subway Real Estate Corp., an entity which is not a party to any of the Franchise Agreements between the plaintiff and the defendants, filed law suits in the courts of the State of New Jersey seeking eviction of the defendants based upon the arbitration awards. While the franchise agreements contain an arbitration clause, the plaintiff's affiliate entity proceeded to utilize the judicial system of this State against the defendants.

To protect their business against wrongful termination and eviction, the defendants filed suit against the plaintiff and its affiliate entity Subway Real Estate Corp. in the New Jersey Superior Court, Essex County (originally filed in Middlesex County, then transferred to Essex County), seeking an injunction against the plaintiff and its affiliate Subway Real Estate Corp. Among others, the defendants challenged the validity and enforceability of the language of the arbitration clause contained in the franchise agreements. It further challenged the franchise agreements as being contracts of adhesion,

which contained unconscionable provisions in contravention with the common law and state law principals applicable to mutuality and unconscionability.

The parties were given extensive opportunity to brief the issues. After consideration of the parties' submission and oral arguments, the Essex County, Chancery Division, issued a preliminary injunction ordering the plaintiff and its affiliate Subway Real Estate Corp. to refrain from using the arbitration awards as evidence of termination of the defendants' franchise agreements. The court further ordered that the "status quo" be maintained until final decision on the merits of the case. The plaintiff and defendant argued and briefed the facts and the law extensively.  (see Certification of Susheela Verma). A copy of Judge Levy's in depth decision and the court order is attached to the certification of Jesal Desai as Exhibit "A".

## B.

## FACTS TO BE CONSIDERED BY THE COURT AS A BASIS FOR DEFENDANTS' MOTION FOR RECONSIDERATION

The defendants own and operate four franchise stores. The defendant Jesal Desai has been a franchisee of the plaintiff since 2002. She gradually acquired four stores at a total cost of close to 1 million dollars. To satisfy the investment requirements to purchase or construct these stores, the defendant Desai obtained numerous secured and unsecured loans and personally guaranteed the same.

The plaintiff has an affiliate entity known as Subway Real Estate Corp. This entity is owned by the plaintiff and is responsible for dealing with identifying and leasing of the business premises for its franchisees. In turn, it subleases the space to a franchisee. This entity is not a party to the franchise agreement between the plaintiff and the defendants.

The franchise agreements are drafted by the plaintiff and are not subject to any meaningful negotiations by a franchisee. While the Subway Real Estate Corp. is not a party to the franchise agreements and has no duties or obligations under the same, it has been given significant rights to enforce termination of the defendants' franchise agreements. In the arbitration clause of the franchise agreement itself, this entity is permitted to commence a lawsuit against the defendants. The defendants, however, are not permitted to utilize the courts of the State of New Jersey and even to stay a legal action commenced by Subway Real Estate Corp., pursuant to the provisions of the arbitration clause, in the courts of State of New Jersey, they must seek arbitration pertaining to the stay of the litigation commenced by this entity. (see certification of Jesal Desai, pages 9, 10 and 11)

For each business territory, the plaintiff appoints an agent known as Development Agent ("DA"). A DA is given extensive powers and financial interest in a franchised store. The DA for all of the defendants' stores is a person named Yogesh Dave. These DAs, including Mr. Dave, are permitted to acquire and operate a franchised store in direct competition of a franchisee. A decision concerning opening of a new store is primarily made by a DA. A DA oversees all compliance issues and has authority to cite a store for violations. An opening of a new store results in a DA receiving part of the fee to be paid by a new franchisee. It further results in additional payment of portion of the royalties and advertising fees to such DA. A DA is also responsible for assisting a franchisee concerning the lease and marketing issues. The business scheme that the plaintiff has in place permits a DA to place an existing franchisee in distress by opening new stores in close proximity. It further permits a DA to first push a store into distress and then even

purchase the same for his personal financial gain at a bargain price. (see certification of Jesal Desai, pages 8-9)

The DA for defendants' territory engaged in self-dealing at the defendants' expense. He permitted the opening of 2 new stores in close proximity of the defendants' newly acquired Subway store; one was within less than half a mile and the second within one mile. This decision of the DA created significant competition for the defendants' store and compelled Desai to purchase another store to avoid competition from a third party. She was compelled to make this decision due to the unfair competition created by the franchiser itself. This compelled decision created serious financial strain for the defendants. These are small businesses and are not large enough to sustain even a small financial fluctuation. Additionally, this kind of challenge was created by the plaintiff and its agents for the defendants' brand new stores. (certification of Jesal Desai, pages 8-9)

The business premises leased by the plaintiff's affiliate Subway Real Estate Corp for the plaintiff's stores have rental cost that is much more than the market rate. Acceptance of the high rental by Subway Real Estate Corp. for the business premises has created additional financial burden for the defendants. Some of the business premises have been constantly leaking resulting in frequent store closings and loss of precious revenue for the defendants. These premises have health issues that are under the sole control of the landlord and the plaintiff's affiliate. During the past few years time period, the plaintiff and its affiliates failed to assist the defendants on these issues but took liberties to cite them for violations for the conditions that were caused due to plaintiff's failure to satisfy its contractual obligations. One of the stores has rat problem that originates from the basement under the control of the landlord. The plaintiff's affiliate has control of these

issues but failed to cure the same. (page 10 of certification of Jesal Desai) The plaintiff and its DA, however, used the very same issues against the defendants and cited them for violation and then made the same a basis for termination of the franchise agreements.

The plaintiff experimented in various state courts. Through its affiliate Subway Real Estate Corp. and the landlords, the plaintiff commenced litigation using the state courts at least 5 times. Then it went through the litigation process in the Essex County, Chancery Division for 10 months. The plaintiff was ordered by Judge Levy to maintain status quo. It, however, violated this order by disturbing the same through its action to file yet another lawsuit in federal court to close the defendants' shop. It made numerous attempts by using the state court system through its affiliate Subway Real Estate Corp. and then the landlords. When, for good reasons, these courts did not subscribe to the plaintiff's scheme to close the defendants' shops, it went to federal court. (See Certification of Susheela Verma).

The defendants obtained a Court Order from the Superior Court of New Jersey, Essex County, Docket No: ESX-C-314-07, restraining the plaintiff from disturbing the "status quo" of the defendants' business. The plaintiff had extensive opportunity to brief the issues. The court found that the plaintiff's contract violated the common law and state contract law principals of mutuality and conscionability. Certain parts of the franchise agreements were preliminarily determined to be unconscionable. The judge's decision preliminarily finds that the defendants may prevail at trial and therefore the court entered a preliminary injunction against the plaintiff and its affiliate Subway Real Estate Corp. After the issuance of this injunction, the plaintiff, through its affiliate, filed new actions in the landlord tenant courts. The defendants' use of the plaintiff's marks is impliedly

-5-

authorized pursuant to Judge Levy's order, as the defendants would have to use the plaintiff's trademarks to maintain the "status quo" and operate their stores. Judge Levy made an initial finding that the defendants may prevail upon the merits of the case and preserved the "status quo". (see Certification of Susheela Verma and Exhibit "A" attached to the certification of Jesal Desai).

The defendants did everything they could to set up a royalty payment system with the plaintiff. The plaintiff, however, refused to withdraw the royalties from the defendants' banks pursuant to the automatic withdrawal authorization because of its position that the franchise agreements have been terminated. (see page 5 of the certification of Jesal Desai and Exhibit A-1 attached thereto. Also see Exhibit "A" attached to the certification of Susheela Verma)

The defendants lease the premises for each one of their four stores. They are liable for loans and investments up to 1 million dollars. If the court grants the plaintiff's request for an injunction their businesses will be destroyed and they will have to apply for bankruptcy. They will have to lay off employees. If an injunction is granted the defendants will sustain a loss of good will, sales, income and they will be financially ruined. The defendants continue to operate their franchises pursuant to the standards of Doctor's Associates. (Certification of Jesal Desai).

The plaintiff can assert control over the quality of goods and services associated with Defendants' restaurants any time it wants to. In fact, it is controlling and monitoring it in the same fashion as it was done prior to termination of the franchise agreements by the plaintiff. The defendants are operating their four stores pursuant to the standards of Doctor's Associates. (Certification of Jesal Desai, page 13 and Exhibit "O").

The defendants did not under report sales nor did they pay the plaintiff with bad certified checks. The confusion over checks was caused by the defendants' bank issuing certified checks but then later canceling the same. (Certification of Jesal Desai, pages 7-8 and Exhibits "H", "I" and "J").

## C.

## THE STANDARD FOR RECONSIDERATION:

## THE DEFENDANTS SATIFY THESE STANDARDS

Local Civil Rule 7.1(i) of the United States District Court, District of New Jersey, states the standard to be applied to motions for reconsideration. It requires the moving party to set forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked.  "Only where matters were overlooked and which, if considered by the Court, might reasonably have resulted in a different conclusion, will the Court entertain such a motion." Bowers v. National Collegiate Athletic Association, Act, Inc., 130 F. Supp. 2d 610, 613 (D.N.J. 2001). The Court may in its discretion hear new evidence or refuse to consider such evidence. Daminano v. Sony Music Entertainment, Inc., 975 F. Supp. 623, 634 (D.N.J. 1997). "Because reconsideration of a judgment after its entry is an extraordinary remedy, requests pursuant to these rules are to be granted 'sparingly'." Id. at 634. This motion satisfies the standards that apply to a Motion for Reconsideration due to the misrepresentation of the facts to the Court by the plaintiff concerning the royalty payments by the defendants. It was represented to the Court that the defendants refused to pay the royalties and refused to set up an automated payment system. (Certification of Verma, Exhibit "B"). The

plaintiff's bad faith dealing with the defendants was not adequately presented to the Court. The Court's decision to issue an injunction was pursuant to the holding of <u>S & R Corporation v. Jiffy Lube International, Inc.</u>, 968 F. 2d. 371 (3rd Cir. 1992). In all likelihood, it was based upon the plaintiff's misleading representation that the defendants have refused to make the royalty payments. As is evident from the certification of Jesal Desai and the attached Exhibits to the same, this was not the case. The defendants authorized the payment by signing the plaintiff's paper work as presented to them. It was processed and the payment authorization system was established. This fact was confirmed by the plaintiff itself by way of issuing four separate letters to the defendants, one for each store. (Certification of Jesal Desai, pages 5-6 and Exhibit "A-1"). After this authorization, there was nothing that would prevent the plaintiff from taking the royalties and advertising fees from the defendants' account. To support its claim of a right to terminate the franchise agreements, the plaintiff unilaterally decided to not to process the payments or discuss the collection issues, if there was any. In fact, the plaintiff did not entertain any discussion with the defendants on this issue. (see certification of Susheela Verma, Exhibit "B"). Thereafter, the plaintiff used its own refusal to accept payment as a foundation for its claim that the defendants refused to pay the royalties. Plaintiff's Order to Show Cause to obtain an injunction against the defendants is rooted in this misrepresentation and was designed to serve its long-standing desire to shut the defendants' business down. The plaintiff has used this Court System to obtain a drastic and affirmative relief against the defendants through improper means. These relevant facts distinguish this matter from the relevant facts of <u>S & R Corporation v. Jiffy Lube International, Inc.</u>, 968 F. 2d. 371 (3rd Cir. 1992. Therefore, the defendants believe that

this matter falls within the parameters of Local Rules 7.1 (i) and that the same satisfies

the standards for reconsideration.

### D.

### THE STANDARD FOR INJUNCTIVE RELIEF & THE PLAINTIFF'S FAILURE

### TO SATISFY THE SAME

In ruling on a motion for preliminary injunction, the court must consider:

> "(1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. (citation omitted) The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." American Telephone and Telegraph Company v. Winback and Conserve Program, Inc., 42 F.3d 1421,1427 (3d Cir. 1994).

If the court considers the defendants' argument that follows, it will find that the

plaintiff did not produce evidence to carry its burden of proof for an injunction.

### ARGUMENT

### (I)

### THE DEFENDANTS' USE OF THE PLAINTIFF'S MARK IS AUTHORIZED

### AND IT IS LIKELY THAT THE PLAINTIFF SHALL NOT PREVAIL ON THE

### MERITS

After extensive arguments and briefing of the issues, the defendants received the

protection of a preliminary injunction from the Essex County, Chancery Division against

the plaintiff. The Court Order mandated that the "status quo" be maintained. The Court's

preliminary finding was that certain provisions of the franchise agreements drafted and

sought to be enforced by the plaintiff are unconscionable. (Certification of Jesal Desai,

Exhibit "A"). As all the details were not before this Court, the Court possibly overlooked the fact that Judge Levy ordered the "status quo" be preserved. In order to preserve the "status quo" and allow the defendants to operate their stores it is implied that the defendants can use the trademarks of the plaintiff, Subway. Judge Martini's reasons for his decision did not mention the fact that Judge Levy's order required the plaintiff to maintain the "status quo". The court made the following comments:

> "I'm familiar with your arguments that you make under the Anti-Injunction Act, but I read closely Judge Levy's Order. Nothing that I do here today would, in effect, be enjoining a State Court proceeding. His Order really dealt with the enjoining of the enforceability of the arbitration award. And, in fact, he makes the exception for other State Court proceedings. So even in his mind his Order was not intended to restrain or enjoin any State Court proceedings other than the extent that the arbitration award couldn't be used as evidence in those proceedings." (Verma Cert, Exhibit "B", Transcript of the  United States District Court, hearing, July 21, 2008).

The court overlooked that the plaintiff must demonstrate that on an infringement claim under section 32 of the Lanham Act that the defendants' use of the plaintiff's mark is "unauthorized". Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 803 (3d Cir. 1998). The defendants' use of the plaintiff's mark is authorized as they are operating the business pursuant to a Court Order. Furthermore, the decision of Judge Levy made an initial finding that the defendants may prevail upon the merits of the case and therefore preserved the "status quo". Judge Levy's decision is detailed and cites cases and makes reference to documents submitted by the plaintiff and the defendants. The defendants can demonstrate that they will prevail on the merits at final hearing and plaintiff cannot terminate their franchise agreements. This necessarily means that the plaintiff may not ultimately succeed on the merits of case. If the plaintiff's agreement is ultimately determined to be unconscionable and therefore unenforceable, the plaintiff

cannot establish a claim of infringement of its trade and service marks. The facts here are seriously in dispute and a preliminary finding favors the defendants and indicates that the defendants are more likely to succeed on the merits of this case than the plaintiff. The court is not aware of the facts of the case that would be revealed through the normal course of discovery. The court was in error in its decision that the plaintiff will prevail on the merits, one of the factors to be used in deciding if the plaintiff has proved that it is entitled to injunctive relief. _American Telephone and Telegraph Company_., 42 F.3d at 1427 (3d Cir. 1994).

"The grant of injunctive relief is an extraordinary remedy . . . which should be granted only in limited circumstances." (Citations omitted) "This proposition is particularly apt in motions for preliminary injunctions, when the motion comes before the facts are developed to a full extent through the normal course of discovery". Id. at 1427. If the court is aware of all the facts, the defendants have shown they can prevail on the merits and that the court should not alter the status quo pending a full discovery of the facts and the trial.

### (II)

### THE PLAINTIFF MISREPRESENTED THAT THE DEFENDANTS HAVE NOT VOLUNTARILY PAID ROYALTIES AND IS UNLIKELY TO PREVAIL AT TRIAL

On pages 6, 7, 21, 22, 26, 28, 31, 32 the plaintiff in its brief, submitted in support of its Order to Show Cause, represents that the defendants are in royalty arrears. The plaintiff failed to state that the plaintiff attempted to terminate the defendants' franchise agreement and at the same time decided to refrain from withdrawing royalties from the defendant's accounts pursuant to defendants' authorization to the plaintiff to this effect.

(see certification of Jesal Desai, pages 5-6 and Exhibit "A-1". Also, see Exhibit "A" to certification of Susheela Verma).  In the cases cited by the plaintiff concerning royalty payments the franchisee voluntarily stopped paying royalty.  These cases deal with the situation where the franchisee refused to pay or stopped making the payments. They do not deal with the situation at hand, where the plaintiff refused to withdraw the money from defendants' accounts who authorized it to do so.  For example in <u>Jiffy Lube International, Inc.</u>, 968 F.2d at 371, the plaintiff voluntarily stopped paying royalties.  It continued to operate its service centers under the Jiffy Lube name. It claimed breach of the franchise agreements and filed suit. Jiffy Lube terminated the franchise agreements for failure to pay royalties.  The court held that in the case of a plaintiff who voluntarily stopped paying royalties that a franchisor's right to terminate a franchise exists independently of any claims that the franchisee might have against the franchisor.  The court stated, "Under basic contract principles, when one party to a contract feels that the other contracting party has breached its agreement, the non-breaching party may either stop performance and assume the contract is voided, or continue its performance and sue for damages."  Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits." <u>Id</u>. at 376. **In this case, the defendants have not stopped to perform their obligations.**

**The defendants have continued to perform the covenants and conditions of the franchise agreement.  They did not stop performance.  They continue to perform under the franchise agreement pursuant to Judge Levy's Order and have submitted a plan to pay the royalties to the plaintiff as per this court's suggestion.  The defendants have demonstrated good faith intent to continue to honor the spirit of**

**the franchise agreements by their submitting a proposal to pay the royalties.** The

non-payment has occurred solely due to plaintiff's actions as it refused to accept the

payment by not withdrawing the funds pursuant to the defendants' authorization

permitting the plaintiff to make automatic deductions from their bank accounts. The

plaintiff's position is very clear from its counsel's letter dated August 10, 2008. (please

see Exhibit "A" to certification of Susheela Verma). It shows that the plaintiff is the one

who breached the contract and refused to work with the plaintiff. It further shows that the

plaintiff has no intent to change its position and does not wish to resolve this issue with

the defendants. The plaintiff shows no intent to even reconcile the significant discrepancy

between the sales numbers of the plaintiff and the defendants. Therefore the ruling of

Jiffy Lube does not apply to these facts. The plaintiff can't have it both ways; refuse to

accept royalty payments and in the same breath state that the defendants have failed to

make royalty payments. As the plaintiff's royalty payment system requires setting up an

automatic payment system, there was nothing else the defendants could have done to

make royalty payments. The court should not have placed any weight on the length of

time the defendants have not made any royalty payments because of the plaintiff's

conduct in failing to satisfy its obligations under the franchise agreements.

The court overlooked the essence of the holding of the cases dealing with the royalties

because the plaintiff alleged that the defendants owed royalties while not stating that it

did not accept the payments. The plaintiff made it seem like the defendants breached the

franchise agreement when the truth is the plaintiff itself breached the franchise agreement

by not accepting royalty payments. Judge Levy preserved the "status quo" and allowed

the defendants to continue to operate pursuant to the franchise agreement. If the court

looks at this matter again it would find that the allegation of a breach of the franchise agreement by the defendants is disputed and is not an established fact at this time. The fact of royalty payment, however, is ascertainable as there is documentation evidencing that the plaintiff had successfully set up an automatic royalty payment system upon authorization of the defendants and misrepresented this fact to the Court. (see certification of Jesal Desai, pages 5-6). The defendants believe that the plaintiff has improperly terminated the franchise agreement and is in violation of the New Jersey Franchise Practices Act. The plaintiff has not suffered any loss or dilution of its marks. It cannot complain about any harm to its marks brought about by any difficulties occasioned by its own conduct. See, KOS Pharmaceuticals, Inc. v. Andrx Corporation, 369 F.3d 700, 728 (3d Cir. 2004) ("a party can hardly claim to be harmed (where) it brought any and all difficulties occasioned by the issuance of an injunction upon itself," so where a party has not brought any difficulties upon itself but the franchiser has brought those difficulties upon itself it cannot complain).

### (III)

### WHILE THE DEFENDANTS WILL SUFFER IRREPARABLE HARM IF A PRELIMINARY INJUNCTION IS ISSUED, THE PLAINTIFF WILL NOT BE HARMED

The court did not fully consider the extent of hardships the defendants shall endure if an injunction is granted. In KOS Pharmaceuticals, Inc., 369 F.3d at 727-728, the court stated,

> "The question is whether, and to what "extent (,) … the defendants will suffer irreparable harm if the preliminary injunction is issued. (Citation omitted). If temporary relief would irreparably harm an alleged infringer pending final

disposition of the case, the court should "balance the hardships" to "ensure that the issuance of an injunction would not harm the infringer more than a denial would harm the mark's owner." (citation omitted). "Irreparable harm must be of a peculiar nature, so that compensation in money alone cannot atone for it. (citation omitted) (quotation omitted). District courts should consider financial damages when establishing and setting the bond for an injunction, not when deciding whether to grant it. (citation omitted). ("No ... preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred ... by any party who is found to have been wrongfully enjoined.")."

The plaintiff will not suffer any harm by the continued use of its mark. In fact, the sales in the franchised stores have gone up and the plaintiff itself has recognized that the defendant has excelled in becoming the highest selling store ever. (Please see Certification of Desai, Exhibit "P" and pages 13-14). The defendants have offered to deposit the royalties in Court and are willing to make payments for the future pursuant to the Court's instructions. (certification of Jesal Desai, page 15.). In light of these facts, it will be a stretch to conclude that the plaintiff will be harmed in any way if an injunction is not issued. The defendants on the other hand will suffer great harm and damages by the grant of an injunction. Not only are the defendants, (specially Desai who guaranteed the loans and lease obligations personally) responsible for four leases but also for loans that were obtained to open and establish these businesses. The defendants will have to let go several employees. The court has not set a bond for an injunction. It is required by Rule 65(c) to set a bond to protect a party who is found to have been wrongfully enjoined. If the injunction is granted the defendants will sustain the loss of good will, sales, income and their business will be destroyed. The defendants will be ruined and thrown into bankruptcy. Pursuant to the Rule, a preliminary injunction cannot issue unless the movant gives security.

**(IV)**

## THE PLAINTIFF'S LOSS OF CONTROL OVER THE DEFENDANTS' FRANCHISES IS SELF-INFLICTED AND IT IS NOT BEING IRREPARABLY HARMED

The plaintiff asserts that it has no control over the quality of goods and services associated with Defendant's restaurants. The defendants have not refused to allow the plaintiff control over the quality of goods and services. The defendants are still being inspected by the plaintiff regularly on a monthly basis and all of their food supplies are being purchased from the plaintiff's designated vendor. (see certification of Jesal Desai, page 13 and Exhibit "O"). All the stores are being operated pursuant to the plaintiff's normal process and the sales are being made pursuant to the plaintiff's established practices. The plaintiff is receiving sales reports as per the established procedures. (Desai Cert.) The plaintiff wrongfully terminated the franchise agreements and refused to assist the defendants with regard to the quality of the goods and services as provided by the franchise agreements. It unilaterally breached the franchise agreements and now is blaming defendants for that breach and the consequences. The plaintiff cannot prove that it is being irreparably harmed. The defendants are operating the Subway restaurants as if they are still authorized Subway franchisees pursuant to Judge Levy's Order. There is no confusion about the plaintiff's mark and use by the defendants. The defendants are permitted to use the trademarks of the plaintiff to operate their stores and preserve the "status quo". The defendants continue to operate its franchises pursuant to the standards of the plaintiff.

## (V)

## IT IS IN THE PUBLIC INTEREST TO ALLOW THE DEFENDANTS TO

## CONTINUE TO OPERATE THEIR FRANCHISED STORES

The defendants are using the marks of the plaintiff pursuant to Judge Levy's Order to maintain the "status quo". The defendants continue to operate their stores according to the standards of Doctor's Associates, Inc. The plaintiff has voluntarily stopped its relations with the defendants and voluntarily chosen to fail to honor the franchise agreements. There is no confusion arising out of the defendants' continued use of the plaintiff's marks. It is likely that the defendants could prevail at trial and prove that the attempt of the plaintiff to terminate the franchise agreements is void.

## (VI)

## DISCOVERY IS LIKELY TO SHOW THAT THE DEFENDANTS DID NOT

## UNDER REPORT GROSS SALES, NOR DID THEY PAY OUTSTANDING FEES

## WITH CERTIFIED CHECKS THAT WERE FRAUDULENT.

The plaintiff argued that the defendants underreported the sales and falsified certified checks. These are the key assumptions which formed part of the plaintiff's arbitration claim. The plaintiff advanced these arguments in support of its application for injunction in this court. These allegations are based upon assumptions and not upon verified facts and therefore a drastic relief like issuance of an injunction that would result in closing of four running businesses should not be granted when the facts are not certain but are highly speculative, manipulated and self serving. The defendants did not engage in the kind of conduct that the plaintiff suggests. Nor did they falsify any checks. (Certification

of Jesal Desai, pages 7-8, Exhibits "H", "I" and "J". Also see Exhibit "A", attached to the certification of Susheela Verma. This letter shows the highly contested nature of the material facts of this matter). These are some of speculative reasons based upon which the plaintiff terminated the defendants' franchises. At this point in time, this court does not have the benefit of having all the necessary details in front of it. This matter is very fact intense and only a small portion of the same has been presented to the court by the plaintiff.

<u>(VI)</u>

<u>PLAINTIFF HAS UNCLEAN HANDS</u>

A plaintiff who requests the assistance of a court of equity must not himself be guilty of inequitable conduct. <u>Precision Inst. Mfg. Co. v. Auto Maint. Match. Co.</u> 324 U.S. 806, 814 (1945). "The clean hands doctrine is applicable when 1) a party is seeking affirmative relief 2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith 3)directly related to the matter in issue 4) that injures the other party 5) and affects the balance of equities between the litigants." <u>Castle v. Cohen</u>, 676 F. Supp. 620, 627 (E.D. Pa. 1987), *aff'd in part and vacated in part on other grounds*, 840 F.2d 173 (3d Cir. 1988). It is the plaintiff's bad faith conduct and misrepresentation that are the basis of its application. The plaintiff has unclean hands and therefore should not be permitted to avail this equitable remedy. In <u>Jiffy Lube</u>, 968 F.3d at 377, the court notes that the defense of unclean hands must show "fraud, unconscionability, or bad faith on the part of the plaintiff." It is a defense to the payment of royalties under the franchise agreements and excuses performance of the payment of royalties. The plaintiff's actions are both in bad faith and unconscionable. The obligation to pay royalties therefore should be excused.

The plaintiff's representations to the court are directly related to this case and its actions and statements have affected the balance of equities between the parties. Because of the plaintiffs' representations the court overlooked the doctrine of unclean hands. The plaintiff's misrepresentation to the court concerning the facts surrounding its claim of non payment of royalties, establishes the plaintiff's bad faith and unclean hands and therefore it is not entitled to an equitable relief under the general principals of equity and the <u>Jiffy Lube.</u>

## E.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that its application for a reconsideration and rehearing be granted and that an injunction in favor of the plaintiff not be issued. If the court engages in a balance of the factors for granting a temporary restraining order and a preliminary injunction, it must hold for the defendants. <u>Constructors Association of Western Pa. v. Kreps</u>, 573 F.2d 811, 815 (3d Cir. 1978). If the matters brought to the attention of the court by defendants in this motion were not overlooked the court would have held for the defendants and deny the order to show cause filed by the plaintiff.

Respectfully Submitted,

Susheela Verma, Esq.
Attorney For Defendants