UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Susheela Verma, Esq. (4472)
LAW OFFICES OF SUSHEELA VERMA
One Woodbridge Center
Suite 810
Woodbridge, NJ 07095
732-596-1140 Fax: 732-596-1150
Attorneys for the Defendants

| | |
|---|---|
| DOCTOR'S ASSOCIATES, INC. | Civil Action No: 08-3363-WJM-MF |
| Plaintiff, | |
| vs. | CERTIFICATION OF SUSHEELA VERMA, ESQ (4472) |
| JESAL DESAI a/k/a JESAL A. PATWARI, SHAPAT, INC., SHAPT II, LLC, SHAPAT III, LLC AND PATWARI, LLC | |
| Defendant. | |

Susheela Verma, of full age, certify as follows:

1. I represent the defendants in this matter. I have also represented the defendants in numerous related matters concerning the same issues. Therefore I am familiar with facts stated in this Certification. I submit this Certification in support of defendants' Motion for Reconsideration of the court's ruling of July 21, 2008.

2. The plaintiff and defendants entered into four separate franchise agreements. All these agreements are identical. A copy of one of the franchise agreements is attached to the certification of Jesal Desai.

3. The plaintiff proceeded for arbitration against the defendants. The defendants did not participate in the process. The plaintiff obtained four arbitration awards against the defendants. Thereafter, its affiliate Subway Real Estate Corp. proceeded, by way of filing legal actions in Superior Court of New Jersey, Hudson County and Superior Court of New Jersey, Essex County, to dispossess the defendants from their business premises used in operating the Subway franchise sandwich shops.

4. Subway Real Estate Corp. is not a party to the franchise agreements between the plaintiff and the defendants but has been given certain rights under these agreements.

5. After commencement of the summary dispossess actions by Subway Real Estate Corp., the defendants filed an Order to Show Cause in Superior Court of New Jersey, Middlesex County. This matter was transferred to the Superior Court of New Jersey, Essex County. The Essex County filing took place sometime in October of 2007.

6. The plaintiff, its affiliate Subway Real Estate Corp. and the defendants were given significant amount of time to submit their briefs in Essex County, Chancery Division. In fact, Honorable Kenneth S. Levy, after hearing the oral argument during the first hearing after submission of initial briefs, granted yet another opportunity to the plaintiff and its affiliate entity to brief additional cases that they desired to present to the court.

7. In February of 2008, Honorable Kenneth S. Levy granted preliminary injunction against the plaintiff and its affiliate entity Subway Real Estate

Corp. The court mandated that the "status quo" be maintained. The court issued detailed analysis if its basis for issuance of the preliminary injunction. This opinion is attached to the Certification of Jesal Desai. During the pendency of the defendants' Order to Show Cause Application, the landlord tenant matters pending in other courts were stayed by the respective courts. These matters were eventually transferred and consolidated with the Essex County, Chancery Division matter.

8. The defendants made numerous attempts to resolve this matter with the plaintiff and even offered to sell the stores. The defendants had prospective purchasers but could not move into this direction as the plaintiff refused to agree to any workable solution for the same.

9. The Essex County, Chancery Division ordered the matter to be submitted to mediation before another judge of Superior Court of New Jersey, Essex County. The parties appeared but the plaintiff did not show any flexibility in its position and this process did not prove to be fruitful.

10. Judge Levy made another attempt to facilitate settlement possibility between the parties and the court appointed a private attorney to mediate the matter. The mediation conference was scheduled during the first part of the month of July 2008. It was adjourned upon request of plaintiff's counsel for one week time period. Prior to appearance for the mediation, the plaintiff filed an Order to Show Cause in the federal court and simply refused to discuss settlement possibility in a meaningful manner. The mediation was terminated at the first

conference as the mediator did not believe that this matter was amenable to settlement.

11. The attached letter of Mr. Turkish (Exhibit "A"), is an evidence of the extent of the dispute between the parties on all the material facts and the evidence that has been relied upon as a basis for the relief sought by the plaintiff. The parties don't agree on the royalty numbers and the plaintiff's claims concerning non payment and the establishment of the payment mechanism are highly contradicting. Mr. Turkish himself admits the plaintiff's refusal to work with the defendants to establish a payment mechanism. The plaintiff's representative rejected defendants' offer to pay and therefore cannot be entitled to the relief it sought in the federal court.

12. During the hearing of July 21, 2008, the counsel for the plaintiff represented to the court that the defendants have failed to make royalty payments by failing to complete the plaintiff's automatic royalty payment deduction authorization. (Exhibit "B", pages 17 and 24). As is evident from the certification of Jesal Desai, these statements are not true.

13. There is a dispute between the parties concerning the termination of the defendants' franchise agreements and a determination that the franchise agreements were properly terminated was not made by the Essex County Court. The Essex County matter was going through the discovery process when the plaintiff filed a Notice of Removal after 10 months worth of litigation. It was done to disrupt the discovery process and to avoid deposition

of Yogesh Dave. Despite numerous attempts, this witness was never produced by the plaintiff.

14. I certify under penalty of perjury that the above stated is true to the best of my knowledge. I am aware of penalties for making false statements.

Respectfully submitted,

Dated: August 15, 2008

By: *[signature]*

Susheela Verma, Esq. (4472)

Law Offices of Susheela Verma
One Woodbridge Center
Suite 810
Woodbridge, NJ 07095
732-596-1140 Fax: 732-596-1150

# Exhibit "A"

Aug 10 08 09:35p    Law Office of Forrest Sco  2013398456           p.1
Case 2:08-cv-03363-WJM-MF   Document 24-25   Filed 08/15/2008   Page 7 of 11
Case 2:08-cv-03363-WJM-MF   Document 20   Filed 08/10/2008   Page 1 of 2

# LAW OFFICE OF
# FORREST SCOTT TURKISH
### 595 BROADWAY
### BAYONNE, NEW JERSEY 07002

**Forrest Scott Turkish**
Member NJ, NY & CO Bars

Phone: (201) 339-8866
Facsimile: (201) 339-8456
Email: fsturkish@aol.com

August 10, 2008

Hon. William J. Martini, USDJ
United States District Court
50 Walnut Street, Room 4076
Newark, NJ 07102

      Re:    Doctors Associates, Inc. v. Jesal Desai a/k/a Jesal Patwari, et als.
             Civil No.: 08-3363 (WJM)
             Our File No.: 1500.151

Dear Judge Martini:

        On behalf of Plaintiff, I have reviewed the letter filed by Counsel for Defendant (Document Number 19), and offer the following. The only issue before the Court, with due respect, is integration of your Honor's Ruling on July 21, 2008 preliminarily enjoining Defendant's infringement of the Subway® Trademarks, and your Honor's subsequent extension of that Ruling as to the effective date of the Injunction from two (2) to three (3) weeks. Defendant has not made any further application. The most recent Order proposed by Plaintiff (attachment 1 to Document Number 17) indicates a two (2) week effective date, which should be corrected consistent with your Honor's Amended Ruling to three (3) weeks or until Monday, August 11, 2008. Therefore the following is only for the Courts edification, if interested, in response to Defense Counsels, unsworn, uncertified statements defaming me, as there has never been any good faith attempt to pay, or Plaintiff would not be owed hundreds of thousands of dollars.

        As to the Defendant's State Court proceeding seeking to permanently enjoin the Arbitration Awards, in violation of 9 U.S.C. 2, et seq., same is referred to in Plaintiff's Verified Complaint at Counts 8 and 9 and in Plaintiff's Reply Brief as well as oral argument. As to that case, a Notice of Removal was filed with this Court on August 4, 2008 pursuant to 9 U.S.C. §205 and on August 6, 2008 the Court assigned the removed Superior Court case to the Federal Court as Case Number 08-3902 (Hon. Peter J. Sheridan, U.S.D.J.). Plaintiff will be moving to consolidate.

        As to the many unsuccessful attempts by Plaintiff to use Defendants successive pre-authorized accounts, discussed during oral argument, these were not the accounts in September 2007 now discussed by Defendants Counsel, Susheela Verma. They were some of the dozen or so earlier aborted attempts between March and June of 2007 to use a preauthorized account, after others had been closed (with Defendant simultaneously failing to electronically transmit point of sale records directly from the cash registers and failing to even send paper reports after previously having done so from 2003 to 2006 although grossly underreporting sales to both Plaintiff and the taxing authorities- which reports incidentally do not match). The preauthorized withdrawals were repeatedly unsuccessful for various reasons, including giving the wrong account number(3/6/07), returned drafts indicating the account being frozen possibly as a result of a levy(5/31/08), drafts

Hon. William J. Martini, USDJ
August 10, 2008
Page Two

being returned for non-sufficient funds(6/8/07 most recently among others), etc. These were all prior to Defendant's termination, prior to Defendant's purported attempt to settle and resolve the approximately $15,000.00 due in July of 2007 by sending fraudulent "certified" checks, later dishonored by PNC Bank, and before the audit results in July 2007, showing that Defendant did not owe over $15,000.00, but in fact owed over $57,000.00 as a result of underreporting sales. The facts now being discussed by Ms. Verma in her August 7, 2008 letter refer to a later attempt in September of 2007 to set up a pre-authorized account after entry of the four (4) Arbitration Awards by the American Dispute Resolution Center terminating each of the four (4) Franchise Agreements on September 6, 2007. Franchisees are required to go through their Collection Representative in order to set up pre-authorized accounts when they are in default. Defendant did contact her Representative who refused to set up the account, as the Franchises had been terminated in Arbitration two (2) weeks earlier. Defendant then did an end-around and sent the pre-authorization forms to a Coordinator who, not aware of the action by the legal department and collection department, forwarded them to accounting who simply processed the authorization and the computer automatically generated the letters of September 27, 2007. However, no funds were taken from Defendant's accounts, as the left hand caught up to the right hand. Even had Plaintiff sought to utilize those accounts, it would have been done after two (2) weeks for set up (1 week) and pre-note test draft through the bank (1 week) and would have occurred on October 5, 2007, when, Defendant would have had to have over $88,345.55 in the account, in order to effectuate a withdrawal making her then current for royalties and advertising on all four (4) stores (she also owed 4 months back rent on 2 stores; lesser amounts on the others). Today it would require more than <u>a quarter million dollars</u> for royalties/advertising fees, excluding other invoices and legal fees pursuant to the Franchise Agreements, and excluding any treble damages available under the Lanham Act, or the approximately $100,000.00 owed to Plaintiffs affiliate under the Subleases. If Plaintiff could have withdrawn the money properly during the twelve (12) months preceding the Arbitration Awards, it would have. No other payment has been tendered since the fraudulent "certified" checks, around the same time her fraudulent underreporting was uncovered in July 2007.

As to the issue of the fraudulent "certified" checks from PNC Bank, the three (3) checks totaling a little over $15,000.00 marked "PNC Bank Certified" which were dishonored by the Bank along with a copy of the letter from PNC Bank addressed to me indicating same are attachment 1 to Document Number 15 on the Court Docket. These are the letters I referred to in oral argument as can be seen from the non-contextual partial record attached to Ms. Verma's letter. At that time, during post ruling argument, Ms. Verma indicated that this was a mistake on the part of the Bank and that she had evidence from the Bank proving same. She states this again in her August 7, 2008 letter and Defendant has been making the same argument since October 2007 when she committed perjury in Landlord-Tenant Court, however I have yet to see any such documentation, or correction by the bank. Additionally, we have since been confronted by two (2) Landlords with more fraudulent "certified" checks <u>this time</u> being dishonored by <u>Provident Bank</u>.

                 Respectfully submitted,

FST/ja                 s/ **Forrest S. Turkish**
cc:  Tricia Lee, Esq. (via email)
   Susheela Verma, Esq. (via ecf and fax (732) 596-1150)    (Forrest/JudgeMartiniDesai1.ltr.doc)

**EXHIBIT "B"**

1  where money gets withdrawn. That account was closed. The
2  Defendant set up a new account but never gave us the
3  authorization, signed the authorization for us to remove those
4  moneys. So in approximately one year -- now the arbitration
5  was last September, right? A week thereafter the
6  landlord/tenant matters were filed. In mid-October the
7  injunction which --
8          THE COURT: They haven't paid any rent?
9          MR. TURKISH: They owe 80,000 on one of the stores.
10 The other ones are minimal in rent. But in royalties alone,
11 royalties and advertising, as of June 3rd was $240,000.
12 Because they haven't paid in one year on any of the four
13 stores.
14         THE COURT: When they were in default, that was for
15 one month that was owed? You said it was 12,000 or $10,000?
16         MR. TURKISH: Yes. No, what it was, was it started in
17 November of '06. It was a running account. It was never
18 zeroed going back into '06. They would pay some but then it
19 wouldn't be current. So it was like a running account and just
20 never got down to zero. Plus, they underreported by 25
21 percent. There was an audit last summer which showed that they
22 underreported 25 percent, which was $40,000, which they never
23 contested at that time.
24         There's a procedure in place in which they were given
25 the procedure --

1  earlier, there's a pre-authorization account. They're supposed
2  to report their sales and a percentage is taken out. Besides,
3  from the other reporting there's an automatic pre-authorized
4  account that they authorize someone to make direct withdrawals
5  from. That account was closed. The Defendant opened up
6  another account but never signed off on the authorization
7  without which the bank is not remove money.
8      And other than that, there's been no payment set,
9  except as long as it's been brought up, three certified checks
10 last summer which were stamped "certified" by -- purported to
11 be certified checks. But apparently that "certified" stamp was
12 put on there by the Defendant, and the bank dishonored the
13 three certified checks. And I have the letter from PNC Bank
14 right here.
15     MS. VERMA: Judge, in discovery I have papers
16 contradicting that. Mr. Turkish say the same thing in front of
17 the other court without any basis 00
18     THE COURT: Ms. Verma.
19     MS. VERMA: One other thing, it's very serious
20 consequence for my client. Let me just say one more thing.
21     As I am telling you, my client did offer. They
22 willing to going forward, they can come up with the mechanics
23 and my client will pay the fee, and whatever is in the past is
24 already in the past and that can be decided by Judge Levy. Why
25 can't there be a resolution to this before you issue such a