UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESAL DESAI a/k/a JESAL A. PATWARI, SHAPAT, INC., SHAPAT II, LLC, SHAPAT III, LLC and PATWARI, LLC )<br><br>Consolidated Plaintiffs, )<br><br><br>DOCTORS ASSOCIATES, INC. AND SUBWAY REAL ESTATE CORP. )<br><br>Consolidated Defendants. )<br><br>DOCTOR'S ASSOCIATES INC. )<br><br>Plaintiff, )<br><br>vs. )<br><br>JESAL DESAI a/k/a JESAL A. PATWARI, SHAPAT, INC., SHAPAT II, LLC, SHAPAT III, LLC and PATWARI, LLC )<br><br>Defendants. ) | Civil Action No. 08-3363  (WJM-MF) |

a. **DEFENDANTS/CONSOLIDATED PLAINTIFFS' BRIEF IN REPLY TO PLAINTIFF/CONSOLIDATED DEFENDANTS' OPPOSITION TO MOTION TO REFER THE CASE TO THE BANKRUPTCY COURT**
b. **BRIEF IN OPPOSITION TO PLAINTIFF/CONSOLIDATED DEFENDANTS' CROSS MOTION**

By:    /s Susheela Verma, Esq._____
Susheela Verma, Esq. (SV-4472)
Law Offices of Susheela Verma
One Woodbridge Center Drive
Suite 810
Woodbridge, N.J. 07095
732-596-1140 Fax: 732-596-1150
Attorney for the Consolidated Plaintiffs

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. (iii – v)

SUMMARY OF RELEVANT FACTS ……………………………………... 2

(A) REPLY TO DAI'S OPPOSITION TO DESAI'S MOTION
     TO REFER THE CASE TO BANKRUPTCY COURT ............................... 4

(B) OPPOSITION TO CROSS MOTION ..................................................... 7

      POINT "1"
           THE ENTIRE MATTER CANNOT BE
           DISMISSED UNDER FRCP 12 (c) ........................................ 7

      POINT "2"

           DAI'S MOTION TO DISMISS UNDER FRCP 12 (b) (6)
           CANNOT BE GRANTED AND THE ARIBTRATION
           AWARDS CANNOT BE ENFORCED.................................... 11

      POINT "3"

           THE ALLEGATIONS AND FACTS PLEAD IN THE
           THIRD PARTY COMPLAINT ARE INTERTWINED
           WITH ALL THE CAUSES OF ACTIONS RAISED BY
           DESAI. THE THIRD PARTY COMPLAINTS HAVE
           NOT BEEN ANSWERED AND THE MOTION FOR
           A JUDGMENT ON THE PLEADINGS IS PREMATURE ............. 25

      POINT "4"

           THE ACTIONS AND CLAUSES OF THE FRANCHISE
           AGREEMENTS BETWEEN DOCTOR'S ASSOCIATES,
           INC. AND JESAL DESAI VIOLATE THE PROVISIONS
           OF NEW JERSEY FRANCHISE PRACTICES ACT ............ 27

      POINT "5"

           DAI CAN'T SEEK POST BANKRUPTCY
           MONETARY JUDGEMENT & RECOVERY...................... 28

      POINT "6"

           DISCOVERY IS NOT YET COMPLETE AND THERE
           ARE DISPUTED FACTS THAT PROHIBIT A
           SUMMARY JUDGMENT .................................................. 30

POINT "7"

    DAI HAS FAILED TO ADVANCE A LEGAL
    THEORY BASED UPON WHICH THE STATE
    COURT INJUNCTION COULD BE VACATED ……………………... 31

POINT "8"

    DESAI'S FAILURE TO PAY ROYALTIES AND
    ADVERTISING FEES ARE NOT PART OF DAI'S
    ARBITRATION AWARDS AND DAI HAS
    WAIVED OR MAY BE STOPPED FROM RELYING
    UPON THAT LACK OF PAYMENT OF ROYALITIES
    TO CANCEL HER FRANCHISES …………………………………… 35

POINT "9"

    DESAI DID NOT INFRINGE OR FALSELY ADVERTISE
    AND DAI DID NOT SUSTAIN ANY ACTUAL DAMAGES
    UNDER THE TRADEMARK OR LANHAM ACT ………………… 38

POINT "10"

    THE FEDERAL RULES AND LOCAL RULES DO NOT
    SUPPORT DAI'S CROSS-MOTION AND IT IS REALLY
    A MOTION FOR SUMMARY JUDGMENT DEPRIVING
    THE NON MOVING PARTY OF AN ADEQUATE
    OPPORTUNITY TO ADDRESS THE HOST OF LEGAL
    ISSUES INVOLVED IN THIS CASE ………………………………... 41

POINT "11"

    THE DISTRICT COURT SHOULD NOT RULE
    UPON LOCAL LANDLORD/TENANT STATE
    COURT REMOVAL ACTIONS ……………………………………… 43

# TABLE OF AUTHORITIES

*Alexander v. Anthony International LLP,*
    341 F.3d 256, 270 (3d Cir. 2003)..................................................... 22, 24

*Allen v. World Insection Network Intern., Inc.,*
    389 N.J. Super. 128 (App. Div. 2006)............................................... 21
*Arby's Inc. v. B & R Mngmt. & Leasing Corp.,*
    2000 WL 1335753 (N.D.N.Y. 2000)................................................ 34, 35

*Association Group Life, Inc. v. Catholic War Veterans,*
    61 N.J. 150, 153 (1972)................................................................... 38

*Bak-A-Lum v. Alcoa Building Products, Inc.,*
    69 N.J. 123, 129-30 (1976)............................................................. 38

*Banff Ltd. v. Colberts, Inc.,*
    996 F.2d 33 (2d Cir. 1993).............................................................. 39

*Blaise Alexander v. Anthony International, L.P.,*
    341 F.3d 256 (3d Cir. 2003)............................................................ 12

*Caesars World, Inc. v. Venus Lounge, Inc.,*
    520 F.3d 269, 273 (3d Cir. 1975).................................................. 40, 41

*Champion Spark Plug Co. v. Sanders,*
    331 U.S. 125, 131-32 (1947).......................................................... 40

*Gender-Motivated Violence Act,*
    Pub. L. 103-332, 40302, 108 Stat. 1941 (1994).................................... 43
*Creative Gifts, Inc. v. UFO,*
    235 F.3d 540, 547-548 (10th Cir. 2000)............................................ 37

*Cuban Cigar Brands, N.V. v Upmann Int'l Inc.,*
    457 F. Supp. 1090 (S.D.N.Y. 1978).................................................. 37

*Delta Funding v. Harris,*
    189 N.J. 28, 39 to 40 (2006)........................................................ 20,21

*Doctor's Assoc., Inc. v. Casarotto,*
517 U.S. 681, 687 (1996)................................................................ 12, 13

*Elecs. Corp. of Am. v. Honeywell, Inc.,*
    358 F. Supp. 1230, 1234 (D. Mass.)................................................. 40

*Estate of Bishop v. Equinox Int'l Corp.*,
    256 F.3d 1050, 1057 (10th Cir. 2001)................................................. 40

Federal Rule 8 (a) (2) and (3) 14......................................................... 14

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
    930 F. 2d 277, 288 (3d Cir. 1991)...................................................... 6

*Frisch Rests. , Inc. v. Elby's Big Boy*,
    849 F.2d 1012, 1015 (6th Cir. 1988)................................................... 39

Great Western Mortgage Corp.,
    110 F.3d at 228-30......................................................................... 13

Harris,
    183 F.3d at 181-84......................................................................... 13

*Hazen v. Modern Food Services, Inc.*,
    113 Fed. Appx. 442 (Oct. 15, 2004).................................................. 10

*Holly Citrus Grovers' Ass'n v. Holly Hill Fruit Prods., Inc.*,
    75 F.2d 13, 17 (5th Cir. 1935)......................................................... 38

*Holiday Inns, Inc. v. Airport Holiday Corp.*,
    493 F. Supp. 1025, 1028 (N.D. Tex. 1980).......................................... 41

*Horizon HealthCare Services, Inc. v. Allied National Inc.*,
    2007 U.S. Dist. LEXIS 26352 (Dist. N.J. 2007)................................... 9, 30

Howard v. Diolosa,
    241 New Jersey Super, 222 (App1990)............................................... 20

*Kellogg Co. v. Exxon Corp.*,
    209 F.3d 562, 569 (6th Cir. 2000)..................................................... 37

*Lucey v. Fedex Ground Package Systems, Inc.*,
    2007 U.S. Dist. LEXIS 77454 (Dis. N.J. 2007).................................... 12, 23, 31

*Martin v. Brown,*
63 F. 3d 1252, 1264 (3d Cir. 1995)..................................................... 6

*Metric & Multistandard Components Corp. v. Metric's, Inc.*,
    635 F.2d 710, 715 (8th Cir. 1980)..................................................... 41

*Morse v. Lower Merion School Dist.*,
    132 F.3d 902 (3d Cir. 1997)............................................................ 10

iv

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614, 624 (1985)………………………………………………… 12

*Monsanto Chem. Co. v. Perfect Fit Prods. Mfg. Co.,*
    349 F.2d 389, 397 (2d Cir. 1965)………………………………………… 39

*Muhammad v. County Bank of Rehobo Beach,*
    189 N.J. 1, 12 (2006)……………………………………………… 13,20,21

*Nagrampa v. Mail Coups, Inc.,*
469 F. 3d 1257 (9th Cir. 2006)……………………………………….. 24

New Jersey Franchises Practices Act, N.J.S.A. 56-10-5…………………… 26

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    7 F.3d 1110, 1118 (3d Cir. 1993)………………………………………… 13

*Rudbart v. N. Jersey Dist. Water Supply Com.,*
    127 N.J. 356, 605 A. 2d 681 (1992)……………………………………… 13 14

*Saratoga Vichy Spring Co. v. Lehman,*
    625 F.2d 1037, 1040 (2d Cir. 1980)……………………………………… 37

*Scarano v. Cent. R. Co.,*
    203 F.2d 510, 513 (3d Cir. 1953)………………………………………… 38

Seus,
    146 F.3d at 184………………………………………………………… 13

*Viola Sportswear, Inc. v. Minum,*
574 F. Supp. 619, 621 (E.D.N.Y. 1983)…………………………………… 41

*Watec Co., Ltd. v. Liu,*
403 F.3d 645, 656 (9th Cir. 2005)……………………………………….. 41

*Westfield Centre Service, Inc. v. Cities Service Oil Co.,*
    86 N.J. 453 (1981)……………………………………………………… 27

*Zazu Designs v. L'Oreal, S.A.,*
    979 F.2d 499, 506 (7th Cir. 1992)……………………………………….. 40

28 U.S.C. 2283………………………………………………………… 34

28 U.S.C. 1367………………………………………………………… 43

## SUMMARY OF RELEVANT FACTS

The defendants/consolidated plaintiffs (hereinafter, for convenience, called "Desai") filed for Chapter 11 bankruptcy protection on or about August 27, 2008. Prior to the Chapter 11 filing, the plaintiff/consolidated defendant Doctor's Associates, Inc. ("DAI") filed a verified complaint and order to show cause application in the U.S. District Court, Newark ("District Court") seeking an injunction under the Lanham Act. An injunction against Desai was issued on or about August 12, 2008. DAI and its agents and corporate affiliates stopped food and other supplies to Desai stores and eventually closed her down. Prior to DAI's filing of the complaint in the District Court, in March of 2007, DAI filed for arbitration claiming default on part of Desai. DAI sought relief in terms of termination of four of her Subway Franchise agreements, damages, royalties, expenses and attorneys fees. Desai objected to the arbitration process. DAI proceeded over Desai's objections and without her participation, obtained four default arbitration awards. Based upon the arbitration awards, in September of 2007, Subway Real Estate Corp. ("SREC"), an affiliate of DAI who leases space to sublease the same to DAI franchisees, commenced lawsuits in Superior Court of New Jersey, Essex County and Hudson County, seeking eviction of Desai from all four stores. The main basis for eviction was termination of the franchise agreements under the franchise agreements.

SREC is not a party to the franchise agreements entered into between DAI and Desai. Desai objected and in October of 2007, filed a Verified Complaint and Order to Show Cause Application in Superior Court of New Jersey, Middlesex County (later transferred to Essex County, hereinafter "state court"). Desai sought an injunction and alleged that the arbitration clause contained in DAI's franchise agreement and many other

2

provisions of the contract are unconscionable, violate the New Jersey Franchise Practices Act and further fail to comply with the contract law of the State of New Jersey. On or about October 31, 2008, the court signed Desai's Order to Show Cause Application. DAI agreed to maintain the status quo pending the briefing and hearing of Desai's Order to Show Cause Application for a Preliminary Injunction. DAI and Desai briefed the issues more than once and finally, at a second hearing, the Superior Court of New Jersey, Essex County, Chancery Division issued a preliminary injunction in favor of Desai and prohibited DAI and SREC from using the arbitration awards as evidence. DAI and SREC were further ordered to maintain status quo. A Case Management Conference took place in Essex County, Chancery Division and a Case Management Order was entered. The parties served interrogatories and demand for production of documents on each other. Desai was ready to produce her discovery and demanded discovery from DAI. DAI did not show any interest in exchanging discovery. DAI's Development Agent, Yogesh Dave, was served with subpoena for deposition. DAI did not produce him for deposition and in July of 2008, filed a separate action in the U.S. District Court. Finally, DAI filed a Notice of Removal for the Essex County pending matter and removed the same to the U.S. District Court based upon its claim that the arbitration agreement fell within the New York Convention as Desai was not a citizen but a permanent resident of the United States. Desai filed a motion to remand the state court matter. It was denied. Desai also filed an appeal from the U.S. District Court's order issuing an injunction against her. The appeal is currently pending. Desai's reorganization in the bankruptcy court has not moved at all due to the pending litigation and the issues pertaining to her rights in the franchise agreements and other assets pending before the court. At the time of the filing

of the bankruptcy petitions, there were two court orders in place: an Essex County Court Order mandating status quo and prohibiting DAI from using the arbitration awards as evidence of termination and the District Court injunction prohibiting Desai from using DAI's trademarks. The state court order was entered on or about February 26, 2008, and the District Court Order was entered on or about August 12, 2008. Desai proceeded to seek relief in the bankruptcy court and due to two court orders, which were difficult to reconcile, the bankruptcy court found itself in a quandary and unable to make any decision. Therefore, Judge Winfield lifted the automatic stay on the litigation between these parties so that the issues pending before the court could move for much desired prompt resolution. Since the date of hearing by the bankruptcy court, Desai's reorganization stands still and paralyzed. Desai is unable to present any meaningful application to the bankruptcy court as the core legal issues affecting the bankruptcy estate are currently pending in the U.S. District Court. For this reason, Desai sought removal of the pending matter to the Bankruptcy Court so that some meaningful decision on her business reorganization could be made by the bankruptcy court. As of today, the litigation between the parties spreads over almost all courts: the state courts, the U.S. District Court, U.S. Bankruptcy Court and the U.S. Court of Appeals for the Third Circuit. (see certifications of Desai submitted earlier; filed document numbers 21-4, 25-4 and 54-4, and exhibits attached thereto, included herein by reference. Also see Document number 35, Desai answer, counter claim and third party complaint).

## (A)

## REPLY TO DAI'S OPPOSITION TO DESAI'S MOTION TO REFER THE CASE TO BANKRUPTCY COURT

In opposition to Desai's Motion to refer the matter to the bankruptcy court, DAI has not cited a single case or statute that would contradict the arguments made by Desai in her brief submitted in support of her motion for removal. DAI simply relies upon Federal Rule of Civil Procedure 11 (b) (1) claiming that the motion has been filed to delay the litigation and is presented for an improper purpose. This argument does not contradict any of the arguments Desai has made in support of her motion to refer the case to the bankruptcy court. In fact, the purpose behind filing of this motion is completely opposite to what DAI alleges. The purpose is to expedite the process, get the reorganization out of the paralysis that it is enduring. Currently, due to the matters pending in different courts and not moving fast enough, the reorganization process is at the same stage where it was almost three months ago at the time of filing of the petition. This paralysis of the reorganization process has resulted in great amount of uncertainty and destruction and disappearance of all of he debtors' property including, but not limited to, tangible and intangible interest in the bankruptcy estate; all due to actions of DAI.

In light of the fact that this court itself has a standing order that mandates a referral to the bankruptcy court of the pending matters involving a debtor's asset and core issues, Desai's motion cannot be called a frivolous exercise. Here we are dealing with debtor whose most important asset may be her interest in various franchise agreements. Here we are dealing with a debtor whose claims concerning her rights in the franchise agreements are pending in this court and a determination of her interest in the franchise agreements is a key element to the successful reorganization of her businesses. Here, we are dealing with a situation where the issue of determination of a debtor's right in a franchise agreement is pending and is unlikely to be determined in a timely fashion to

permit any meaningful bankruptcy protection. A debtor's attempt to seek judicial determination on an issue where a referral is permitted to the bankruptcy court cannot be called a frivolous exercise by any existing legal standards.

The Third Circuit Court of Appeals has stated that for Rule 11 sanctions, the question is whether the conduct was reasonable under the circumstances". <u>Ford Motor Co. v. Summit Motor Prods., Inc.</u> 930 F. 2d 277, 288 (3d Cir. 1991) (citation omitted). In this context, reasonableness has been defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact. <u>Id</u>. (internal quotations omitted). Furthermore, bad faith is not required. <u>Martin v. Brown,</u> 63 F. 3d 1252, 1264 (3d Cir. 1995) (citation omitted).

The dilemma the bankruptcy court has faced due to the existence of multiple litigation forums that exist in this case, is apparent from the following colloquy that took place before Honorable Novalyn Winfield:

> "THE COURT: Yes, yes. But I am just, you know, I mean I think that is a different question. *To the extent things are being done to a debtor within days of a filing without any clear indication that the debtor does not have some interest in the franchise agreements and the use of the trade names and so on. I think it is a little problematic to be acting as if they do not.*
>
> I guess my mind flips forward to the ultimate question is ok so now you have got Judge Levy's order and you have got Judge Martini's order. *I don't exactly know sitting here how to deal with that." I am not, you know, the debtor comes in to chapter 11 with whatever rights it had at the time it filed for chapter 11. If you ask me today what I thought those rights were, I don't know.* Emphasis added.
>
> (Please see page 12 of bankruptcy court proceedings, attached to Certification of Desai as Exhibit "I" submitted earlier).
>
> MR. MARKS: ---Judge Levy said the status quo should be maintained? I mean that is analogous to what a bankruptcy judge would say in Chapter 11 case, the debtor should be able to operate.

Why are we focusing on Judge Martini who entered an order on issues that were actually covered by Judge Levy's order?

THE COURT: *Well see I don't know that they were. I mean by reading and in this --- before Mr. Turkish even raised it, it puzzled me. I see what Judge Levy's concern was which was whether the underlying agreements are in some way contracts of adhesion and void as against public policy and that sort of thing. Whether they are or not I express no opinion on.*

He issues a fairly broad injunction with respect to any proceeding in state court. (page 42). Emphasis added.

In light of the serious confusion encountered by the bankruptcy court for the reason that the entire dispute was not before the bankruptcy court and for the fact that the debtor's bankruptcy petition stays at a stand still, the stores are closed, there is no income coming in, the issue of the debtor's rights in the franchise agreement is still at the same stage of litigation as it was in the state court prior to its removal, an attempt on part of the debtor seeking some sense into the pending matters and seeking to bring them before the bankruptcy court so that the core issues could be decided promptly and at a time when there is a meaning to it, cannot be called a frivolous application by any existing legal standards. As Desai will show, what is frivolous is the DAI motion to dismiss when it is apparent that the pending matter has so many issues that it cannot be decided in a summary fashion.

## B. OPPOSITION TO CROSS MOTION

## LAW

## POINT 1

## THE ENTIRE MATTER CANNOT BE DISMISSED UNDER FED. R. CIV. P. 12

## (C)

DAI seeks to dismiss the entire case pending in this court. The pending matter comprises of (a) Desai's verified complaint filed in the Superior Court of New Jersey, Essex County, which contains claims that default arbitration awards secured by DAI are unenforceable and void as they originate from franchise agreements which are contracts of adhesion. Desai alleged that the franchise agreements are unconscionable and violate New Jersey contract laws that apply to all contracts. Further, her pleadings contain allegations that certain provisions of New Jersey Franchise Practices Act have been violated by DAI. (see filed document 9-1, Verified Complaint of Desai, attached to Certification of Verma). (b) DAI's and SREC's answer and counterclaim filed in the State Court alleging various violations on part of Desai. (c) Numerous landlord tenant matters which were commenced by SREC and Bhiku Patel, an individual citizen of the State of New Jersey. These matters were consolidated with the Essex County, Chancery Division matter and then were removed to the District Court by DAI. These matters involve factual issues and Desai's claims against Bhiku Patel concerning the rent claims made, habitability, maintenance and countless other claims and issues against SREC, DAI and Bhikhu Patel. (d) DAI's complaint filed in the District Court. (e) Desai's answer and counterclaim filed against DAI in the District Court containing a host of allegations. (f) Desai's Third Party complaints against Yogesh Dave, SREC and Subway Development Co. These parties have defaulted and have not filed a responsive pleading within the time permitted by the court rules. As no appearance has been filed, these parties cannot plead for dismissal at this stage. (please see certification of Susheela Verma).

8

Doctor's Associates, Inc. and Subway Real Estate Corp. move under Federal Rule of Civil Procedure 12 (c) for a judgment on the pleadings. Rule 12 (c) provides, in pertinent part, that "(a)fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The pleadings are "closed" after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." Horizon HealthCare Services, Inc. v. Allied National Inc., 2007 U.S. Dist. LEXIS 26352 (Dis. Ct. N.J., 2007). The pleadings in this case are not closed. DAI has not filed an answer to Desai's counterclaim in the District Court matter. Further, SREC has not filed an answer to Desai's third party complaint. Similarly, Yogesh Dave and Subway Development Co. have also failed to file responsive pleadings entitling Desai to seek a default against these parties on her pleadings. As the pleadings are still open, DAI has not satisfied Rule 12 (c) requirements.

No responsive pleadings have been filed to date by four parties to this litigation. The facts and claims asserted in the third party complaints are related to the pleadings in the consolidated cases and support Jesal Desai's claims for relief against Doctor's Associates Inc. and Subway Real Estate Corp. In as much as the third party complaints have not been answered, this court must consider the facts alleged in the third-party complaints as true. In fact, in considering a Rule 12 (c) motion, the court must assume that Ms. Desai can prove all the facts set forth in her pleadings and then determine if those allegations establish a cause of action or defense as opposed to a summary judgment motion. "Summary Judgment involves no such presumption." "As the Third Circuit has clearly found, "(I)n deciding the motion for judgment on the pleadings, the district court determines from the pleadings 'if it appears to a certainty that no relief

could be granted under any set of facts which could be proved." Id.; Hazen v. Modern

Food Services, Inc., 113 Fed. Appx. 442 (Oct. 15, 2004) (quoting Morse v. Lower Merion

School Dist., 132 F.3d 902 (3d Cir. 1997).

As in Horizon, Doctors Associates, Inc. and Subway Real Estate Corp., do not argue

that Ms. Desai's pleadings do not raise a defense or cause of action of unconscionability

and related claims to the enforcement of the termination of her franchise agreements or

the enforcement of the arbitration awards but that Ms. Desai can't prove the facts that are

set forth in her pleadings. The court said that it could not make such a determination on a

motion for judgment on the pleadings but must follow the presumption that the non-

moving party could prove all the facts set forth in its pleadings. Id. Doctors Associates

continues to assert that Ms. Desai tendered false checks to pay certain expenses owing to

it. Yet, Ms. Desai time and time again in her certifications has explained over and over

again that Mr. Turkish's statements and representations are false. Her statements explain

what happened and totally refute Mr. Turkish's allegations. (See filed documents 21-4,

25-4, 35, and 54-5, certifications of Jesal Desai and answer, counterclaim and third party

complaints). Since DAI and Desai's statements are totally opposite of each other, only a

trial may decide the issue and determine if the check incident is a valid reason to

terminate her franchises.

The first question that the court must answer is whether the laws and cases that set

forth the defenses and causes of action that Desai may assert contest the validity of

Doctor's Associates, Inc.'s attempt to terminate her franchises and enforce its arbitration

awards? The second question is whether Ms. Desai has alleged in her pleadings a

defense or cause of action to Doctor's Associates, Inc.'s attempt to enforce its arbitration

awards, and if so, the motion for judgment on the pleadings must be dismissed.

**POINT 2**
**DAI'S MOTION TO DISMISS UNDER FRCP 12 (b) (6) CANNOT BE GRANTED AND THE ARIBTRATION AWARDS CANNOT BE ENFORCED FOR THE FOLLOWING REASONS:**

    a. **ASSUMING THE FACTS AS TRUE AS PLEADED BY JESAL DESAI IN HER COMPLAINT, ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINTS, THERE ARE CLEARLY ISSUES OF FACTS AND LAW THAT PRECLUDE A JUDGMENT ON THE PLEADINGS**

    b. **THE ARBITRATION AWARDS ARE UNEFORCEABLE AS THE ARBITRATOR'S AUTHORITY IS BASED UPON A CONTRACT THAT IS ALLEGED TO BE UNCONSCIONALE AND THUS VIOLATES NEW JERSEY LAW OF CONTRACT AND THE PROVISIONS OF THE NEW JERSEY FRANCHISE PRACTICES ACT**

    c. **DESAI OBJECTED TO THE ARBITRATION PROCESS AND THE DEFAULT AWARDS WERE ENTERED IN VIOLATION OF THE LAW AND HER RIGHTS**

    d. **THE FRANCHISE AGREEMENTS FORMING BASIS OF THE DEFAULT ARBITRATION AWARDS SOUGHT TO BE ENFORCED ARE ROOTED IN AN ARBITRATION CLAUSE OF THE FRANCHSIE AGREEMENTS WHICH IS PART OF A CONTRACT OF ADHESION, LACKS MUTUALITY AND IS UNCONSCIONABLE**

    e. **THERE ARE COUNTLESS FACTUAL ISSUES THAT PRECLUDE DISPOSITION OF THE PENDING MATTER IN A SUMMARY FASHION**

Jesal Desai has plead in her answer, affirmative defenses, counterclaim and third-party complaints, in one form or another, as affirmative claims or defenses that the arbitration clause and many other clauses of the franchise agreements are unenforceable as unconscionable. The Federal Arbitration Act, 9 U.S.C.S. 1 et seq. and the New Jersey Arbitration Act, both provide in part that arbitration agreements are valid and enforceable, save **"upon such grounds as exist at law or equity for the revocation of**

11

**any contract.**" (Emphasis added). The moving party's reliance on the Arbitration Acts in support of its position that it prohibits a review of the arbitration clause of the franchise agreement for unconscionability is just plain wrong and contrary to federal law, law in our own District Court, U.S. Court of Appeals for this Circuit and the contract laws of the State of New Jersey.  The Third Circuit in Blaise Alexander v. Anthony International, L.P., 341 F.3d 256 (3d Cir. 2003) and the United States District Court for the District of New Jersey in Lucey v. Fedex Ground Package Systems, Inc., 2007 U.S. Dist. LEXIS 77454 (Dis. N.J. 2007) set forth the standards for a court to follow to determine the grounds at law or equity to determine the validity of an arbitration agreement.  A district court is to:

"Look to the relevant state law of contracts in making this determination. (citations omitted).  An agreement to arbitrate may be unenforceable based on a generally applicable contractual defense, such as unconscionability.  See, e.g. Doctor's Assoc., Inc. v. Casarotto, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 116 S. Ct. 1652 (1996).  According to the Supreme Court, courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 624, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985).  Although possibly relevant, considerations of public policy and the loss of state statutory rights are not dispositive in the unconscionability inquiry.  The general applicable standards of this contractual doctrine continue to dictate the result of any analysis.  Consistent with the Supreme Court's call, we have on several occasions dealt with claims that an arbitration contract is invalid on grounds of unconscionability or

12

disparity in bargaining power. See *Harris*, 183 F. 3d at 181-84; *Seus*, 146 F.3d at 184; Great Western Mortgage Corp., 110 F.3d at 228-30; Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1118 (3d Cir. 1993).

The New Jersey Supreme Court in Muhammad v. County Bank of Rehobo Beach, 189 N.J. 1, 12 (2006), reiterated the holding of the Supreme Court in Doctors Associates, Inc. v. Casorato, 517 U.S. 681 (2006), that applicable contract defenses such as fraud, duress or unconscionability may be applied to invalidate arbitration agreements without contravening Section 2 of the Federal Arbitration Act. The court may refuse to enforce unconscionable clauses of an adhesion contract and arbitration clauses are severable and may be invalidated invalidating the contract of which it is a part. Muhammad, 189 N.J. at 15. Furthermore, a New Jeresy Court will not enforce arbitration awards that were rendered based upon an arbitration clause that is part of an adhesion contract and unconscionable. Doctor's Associates itself in is brief admits that the defense of unconscionability will defeat its letters of termination of the franchise agreement and its unconscionable arbitration awards.

Page 15 of the Muhammad opinion, cited the seminal case of Rudbart v. N. Jersey Dist. Water Supply Com., 127 N.J. 356, 605 A. 2d 681 (1992), as setting out the factors for a New Jersey Court to consider when determining whether a specific term in a contract of adhesion is unconscionable and unenforceable. The Muhammad court said that unconscionability traditionally entails discussion of two factors: procedural unconscionability, "which can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process, and substantive

13

unconscionability, which generally involves harsh or unfair one-sided terms." Id. at 15. "In determining whether to enforce the terms of a contract of adhesion, courts have looked not only to the take-it-or-leave-it nature or the standardized form of the document but also to (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the "adhering" party, and (4) the public interests affected by the contact." Id. at 15-16.

The court required a careful "fact-sensitive" examination into both procedural and substantive unconscionability on a case by case basis taking into account all of the relevant facts and circumstances. Id. at 16. The court noted that a "sliding scale" analysis may be appropriate between both factors. Id. at 16.

The question is whether Desai's affirmative and responding pleadings set forth an affirmative claim and defense of unconscionability to DAI's causes of action such that a judgment on the pleadings may not be granted.

In reviewing Desai's pleadings, it is important for the court to remember that she is under no obligation to specify all the facts that support her claims and defenses but only sufficient facts and claims to put DAI on notice of her claims and plead a cause of action. Pursuant to Federal Rule 8 (a) (2) and (3), a pleading must only contain "(2) a short and plain statement of the claim showing that the pleader is entitled to relief and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." It is commonly referred to as "notice" pleading. To prove her case, Desai will rely upon facts learned in discovery and upon many facts not provided in her pleadings. Desai and DAI have yet to engage in discovery.

14

The verified complaint filed by Jesal Desai in New Jersey State Court on October 15, 2008, Docket No: ESX-C-314-07, recites in paragraph 14, that "The franchise agreements signed by plaintiff were standard, lengthy and complex documents that were not subject to negotiation." Paragraph 31 states, "The plaintiff and defendant did not negotiate or bargain over the terms and conditions of the franchise agreement aforesaid. The paragraphs of the contract are part of a boilerplate contract written in small print. The plaintiff did not have a meaningful opportunity to negotiate the terms of the franchise agreement. The plaintiff had no economic power to change or control the provisions of the agreement and had to accept what the defendant offered." Paragraph 32 states, "The plaintiff is not a lawyer. She is untrained in the law." Paragraph 33 states, "The defendant is a large multi-national corporation of thousands of franchise owners around the world." Paragraph 34 states, "The plaintiff had no power to change or alter the provisions of the franchise agreement." Paragraph 35 states, "Paragraphs 10 and 13 are in small print towards the end of the contract and paragraphs 17 and 18, though in a little larger print, are not set off from the rest of the contract. The clauses are buried in a sea of 14 pages of small print. The plaintiff did not initial or check the contract provisions to signify unconditional acceptance of the terms and conditions of a waiver of all most all of her legal rights by paragraphs, 10, 13, 18 and 19." Paragraph 37 states, "The agreement signed by the plaintiff and defendant is a contract of adhesion and the paragraphs of the mentioned agreement are unconscionable and void as against public policy." The contractual relief requested in Ms. Desai's complaint is based upon provisions of the contract as being found unconscionable. (This document is already filed with the court and is included by reference. See Court filing No. 9, Exhibit 1)

15

Yet our inquiry into the facts and allegations in support of Ms. Desai's affirmative cause of action and her defenses based upon unconscionability is not over. In her certification filed with her state court complaint, she said in paragraph number 6, "All the lease agreements for the business premises were negotiated and finalized by the defendant." In paragraph 13 she states, "The franchise agreements signed by me were standard, lengthy and complex documents that were not subject to negotiations." In paragraphs 22 she states, "At no point during the sale of the four franchise agreements did anyone from the Subway organization discuss the contract terms of the franchise agreement. The franchise agreements just came in the mail from the home office to my doorstep and if I wanted to own and operate a Subway franchise I had to sign the franchise agreement or else I could not own a Subway franchise. It was just a take-it-or-leave-it offer. The contracts were all long and in small print." In paragraph 23, she states, "At no time during or after the sale of the four stores did anyone discuss the terms and conditions of the franchise agreement, read the provisions over to me, or point out some of the key provisions and waivers of the franchise agreement affecting my legal rights."

So at the very outset of the litigation in her verified complaint and certification in state court, Desai has set forth facts and allegations that prove the factors the <u>Muhammad</u> Court outlined as required for a finding of a contract of adhesion and an unconscionable contract. In Desai's pleadings to the district court case, she has plead many of the same facts and added more facts to support her various defenses and causes of action. In a nutshell, on the face of all her pleadings, the franchise agreements are in small print,

16

complicated take-it-or-leave-it contracts that DAI does not negotiate but strong-arms upon it franchises to operate a Subway restaurant.

Looking closely at the facts, a party must establish the factors proving a defense or cause of action based upon unconscionability. Desai has alleged facts that clearly establish a defense and affirmative cause of action and prohibit a judgment on the pleadings and prohibits a summary judgment.

**1.**

**UNEQUAL BARGINING POWER**

DAI is the owner of more than 29,000 franchises in 93 countries and retains all the power to offer or decline to offer the opportunity to purchase its franchises. (see Certification of Tricia Lee). Desai is a small family owned business. She only owns four of those 29,000 franchises. Doctor's Associates is a huge multi-national corporation that has endless resources compared to very few resources of Ms. Desai. Ms. Desai singed a one-sided franchise agreement that DAI required Desai as if with no changes allowed.

**2.**

**EVIDENCE OFFERED BY DOCTOR'S ASSOCIATES ACTUALLY SUPPORTS DESAI'S CLAIMS**

Doctor's Associates, Inc. never denied the truth of Ms. Desai's statements but points in its brief to certain documents in which the franchisor asked for certain disclosures from the franchisee, who indicated that she understood that the arbitration was mandatory and that she would have to go to Connecticut to arbitrate any disputes. Doctor's Associates, Inc. claims that Ms. Desai was given and took advantage of the opportunity to have the agreement reviewed by a professional and by implication that she

17

never responded with any counter offer or attempt to negotiate the terms of the franchise agreement. Ms. Desai asserts that, through discovery, she will be able to prove that in the many thousands of agreements for franchises offered by Doctors Associates, that it has never offered or negotiated any provision in its franchise agreement. That it has committed a fraud upon the court by attempting to say that it negotiates the terms of its franchise agreements.

The truth is that Doctor's Associates' questionnaires themselves actually support Ms. Desai's position that the franchise agreements are contracts of adhesion. The questionnaire was one of several forms Desai was required to fill out to purchase a Subway franchise. There were two separate franchise disclosure questionnaires and the documents listed questions and required Ms. Desai either check boxes yes or no. These documents were signed in 2002 and 2006. Among the answers to the questionnaire, Desai indicated that she had reviewed and understood the franchise agreement, the uniform franchisee offering circular both personally and with either a lawyer, accountant or other professional advisor, and that she had discussed the benefits and risks of operating a Subway franchise with that advisor and that she understood that all the disputes arising out of the franchise agreement must be arbitrated in Connecticut. But as previously noted, that questionnaire and that question in particular actually provide evidence that the forum selection clause was procured by coercion in the sense that this was part of a contract of adhesion. Question 11A states, "Do you understand all disputes or claims you may have arising out of relating to the franchise agreement **must** (emphasis added) be arbitrated in Connecticut if not resolved informally or by mediation." It did not matter if Ms. Desai had a lawyer to review the document because Doctors Associates

does not negotiate the terms of its franchise agreement. (Exhibit E, Certification of Verma).

It is clear that the use of the word **must** reflect a lack of negotiation over that provision, particularly in view of one of the stated purposes of the questionnaire as set forth in its introductory paragraph, "The purposes of the questionnaire are to determine whether any statements or promises were made to you that we have not authorized or that may be untrue, inaccurate or misleading." Thus, as it relates to the Connecticut forum for arbitration, the clear implication is that if anyone connected with the franchisor made a statement or promise to the franchisee that the forum for arbitration was negotiable it would be untrue because, as clearly stated in the question, any disputes **must** be arbitrated in Connecticut. Therefore, as it relates to the forum for arbitration, the questionnaire strongly supports the position that it was presented on a take-it-or-leave it basis.

The questionnaire asked other questions indicating this lack of negotiation. For example, question eight asks, "Do you understand we have not granted you any territorial rights and that another Subway franchisor company store may open near your restaurant?" Similarly, question 10 asks, "Do you understand there are no radius restrictions or minimum population requirements concerning where another franchise or Subway company restaurant may open?" These questions support Desai's contention that the agreements were not negotiated because it demonstrates Doctor's Associates reservation of a right to grant completive franchisers right next to that of Desai. Question 11 asked, "Do you understand the franchise agreement provides you can only collect compensatory damages of $80,000.00 and not any consequential or punitive damages?"

19

Had there been any negotiation over the forum selection clause or the arbitration clause or other terms of the contract, such negotiation would have been unauthorized and void. (Exhibit "E", Verma Cert). Doctor's Associates' statement in its brief that Desai reviewed the franchise agreements with a lawyer or other representative is a red herring argument. It does not matter who or how many people she consulted regarding the franchise agreements offered by Doctors Associates, they were non-negotiable contracts. Clearly they were contracts of adhesion.

### 3.

### THE TERMS OF THE FRANCHISE AGREEMENTS ARE MANIFESTLY UNFAIR AND OPPRESSIVE AND ROOTED IN LARGE BARGAINING DISPARITY

In terms of an unconscionable agreement the court in Howard v. Diolosa, 241 N.J. Super, 222, 230 (App. Div. 1990), the New Jersey Appellate Court said that a contract is unenforceable if its terms are manifestly unfair or oppressive and are dictated by a dominant party. Desai must demonstrate unconscionability by showing some overreaching or imposition resulting from a bargaining disparity between the parties or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms. The agreements were not negotiated. Ms. Desai was forced to accept the terms of the agreements. She was unable to hire a lawyer in Connecticut. She states that it was more than mere inconvenience and a denial of the due process.

The court in Delta Funding v. Harris, 189 N.J. 28, 39-40 (2006), lists the factors for a court to consider in finding a contract of adhesion and unconscionability as in Muhammad, and also lists the degree of economic compulsion motivating the adhering

party to accept the contract.  In a limited market, Ms. Desai was compelled to accept

Doctor's Associates unilateral offer for a contract if she wanted a Subway franchise.

## 4.

## NEW JERSEY HAS A STRONG PUBLIC INTEREST IN POLICING THE PROVISIONS OF A FRANCHISE AGREEMENT

As held in Mohammad and Delta, a court must look to the public interest factor

affected by the contract.     In Allen v. World Inspection Network Intern., Inc., 389 N.J.

Super. 128 (App. Div. 2006), the court noted the public interest noted by the legislature

in enacting the New Jersey Franchise Practices Act, N.J.S.A. §56, could be taken into

account in determining whether or not a particular arbitration agreement was

unconscionable.  The court held that the general legislative policies underlying the New

Jersey Franchises Practices Act may be considered as a factor in the unconscionability

analysis just as the policies underlying the Consumer Fraud Act were considered as a

factor in the *Muhammad* case.

## 5

## THE OBLIGATIONS IMPOSED UPON DESAI BY THE FRANCHISE AGREEMENTS LACK MUTUALITY

As held in Mohammad and Delta, another important factor is mutuality.  For

example, Desai agreed to submit her disputes to arbitration in Connecticut but Doctor's

Associates, reserves the right, for itself alone, in the same paragraph to bring an action for

injunctive relief in any Court having jurisdiction to enforce trademark or property rights

or covenants not to compete or restrictions on disclosure of confidential information. (see

franchise agreements, exhibits A, B, C and D to the Certification of Tricia Lee). Only the

franchiser can prosecute a suit for an injunction in court.  Subway Real Estate Corp. can

bring an action to evict Jesal Desai. Yet, in order to get a stay of that proceeding under the franchise agreement, the franchisee would have to arbitrate in Connecticut. In Alexander v. Anthony International *LLP*, 341 F.3d 256, 270 (3d Cir. 2003), the court found that an agreement to arbitrate between a multi-national corporation and an individual procured without negotiation wherein the loser of the arbitration would bear the cost of arbitration was one-sided and unreasonable, and therefore, unconscionable both procedurally and substantially. Here the agreement would leave Desai with no option but to arbitrate claims in Connecticut while enforcement would give defendant not only the option to go to Court but also the option to choose a judicial forum. Other provisions of the franchise agreements lack mutuality. For example, the franchise agreement requires the franchisee to sublease the location of the restaurant from DAI or an affiliate, and that DAI, "will attempt to secure a fair rent for the premises but we cannot represent it will be the best available rent in the area." (Franchise Agreement, Section, 5A3, Exhibits A through D to Lee Cert.). Desai talks in her verified complaint, paragraphs 12, 13, 16, 17, 18, and her certification in paragraphs 7, 10 and 12, about how Subway Real Estate Corp. has failed to obtain even market rents for her stores and how she has no choice but to accept high rents. Desai has also pointed out that even though she pays 4.5 percent of her gross revenues for advertising and 8 percent for royalties and has invested close to $1 million dollars in her stores, Doctors Associates, Inc. will not assist her in analyzing locations and has opened up franchises in close proximity to her stores (Verified Complaint Paragraph 11, filed document 9-1), impacting her business in a significant manner and reducing sales by at least 40 percent (Verified Complaint & Certification, filed document 9-1 and Exhibit "F" to Certification of Verma). This is

another example of one-sided dealing by Doctors Associates, Inc. and Subway Real Estate Corp.

The limitation of damages to $80,000.00 is another example of a one-sided provision. Ms. Desai has invested close to $1 million dollars to open and operate her stores. She has forwarded thousands of dollars in royalties and advertising costs to Doctors Associates. Yet, despite the fact she has $1 million dollars invested in her stores, she would not be able to recover her investment as damages in a dispute with Doctors Associates but would have to settle for pennies on the dollar. This provision is unconscionable on its face.

The franchise agreements also state that Ms. Desai may not open another sandwich shop in the same area as her Subway stores is her franchises are terminated for any reason. That provision is a restraint of trade and is in violation of the Sherman Anti-Trust Act. She is induced by Doctors Associates to spend large amounts of money to open, operate and maintain her stores yet if she no longer wishes to operate a Subway franchise, she must forfeit all of her labor, effort and good will, no matter the amount Doctors Associates has led her to invest and walk away without any recourse. Such provisions are closely scrutinized by the courts and have been held to be unconscionable.

In Lucey v. Fedex, the United States District Court for the District of New Jersey, Camden Vicinage, analyzed a case which has very similar elements as the case at bar. The plaintiff argued that the arbitration clause of the OA was both procedurally and substantively unconscionable. The defendant argued the opposite. The plaintiff argued that the arbitration provision was substantively unconscionable because it: 1)limits the damages recoverable by the contractors; 2) requires contractors to make demand for

arbitration within 90 days of termination; 3)imposes significant arbitration expenses on contractors; 4) unreasonably limits discovery; and 5) prohibits the arbitrator from issuing a written opinion. While analyzing these provisions to determine substantive unconscionability, the court relied upon Alexander v. Anthony Intern L.P., 341 F.3d 256 (3d. Cir. 2003). In *Alexander*, the arbitration provision in the employment agreement limited an employee's relief to "(r)einstatement and narrowly defined "pecuniary damages" and required parties to "bear their own costs and expenses, including attorney's fees." *Id.* at 267. The court found these limitations unconscionable, explaining,

> "(t)hese restrictions are one sided in the extreme and unreasonably favorable to (defendant). They prevent an employee from recovering not only his or her attorney's fees but also such potentially significant relief as punitive damages. An employee therefore is not entitled to complete compensation for any harm done and the company is able to evade full responsibility for its actions." (see Exhibit "A", attached to Certification of Susheela Verma). The provisions contained in DAI's franchise agreement parallel the above stated.

Further, DAI is stopped from seeking an enforcement of the arbitration awards. It cannot, at the same time, argue that its agreement is valid and enforceable and in the same breath seek to breach the same. In Nagarampa v. Mail Coups, Inc., 469 F.3d 1257 (9th Cir. 2006), the arbitration proceeded without the participation of the franchisee in Boston and resulted in an award against her in an amount over $160,000. Nagarampa, the franchisee, filed a suit against the franchiser and AAA in California State Court, alleging that Mail Coups was liable for common-law misrepresentation and fraud, as well as for violating the California Consumer Legal Remedies Act and California's franchise and

unfair competition laws. Nagarampa sought monetary damages from Mail Coups and an injunction preventing the company from enforcing the arbitration clause against her.

Like the case at bar, Mail Coups removed the case to federal court and then moved to compel arbitration and dismiss the court proceedings. In opposition, Nagrampa argued that arbitration clause was unconscionable and thus unenforceable. She argued that the arbitration clause was procedurally unconscionable because her "franchise agreement (was) a contract of adhesion. It was presented to her on a take-it-or-leave-it-basis. She was not allowed to negotiate any of its terms. "She then gave three grounds for the arbitration clause's substantive unconscionability: 1) a venue of Boston was unfair, 2) the arbitrator was not neutral, and 3) Mail Coups did not disclose the cost of arbitration.

The district court concluded that the agreement was valid and granted Mail Coups motion to dismiss. The Court held that the District Court's failure to analyze the evidence of procedural unconscionability in proportion to the evidence of substantive unconscionability was error. The court held that the arbitration provision in the franchise agreement was both procedurally and substantively unconscionable. Because it could not be saved by severance or restriction the entire arbitration provision was invalid and unenforceable.

The list goes on and on. Suffice it to say that the one-sided nature of the agreement combined with the absolute lack of negotiation support Ms. Desai's allegations that the franchise agreements and the arbitration awards are part of or rely upon provisions of an adhesion contract and are unconscionable.

## POINT 3

## THE ALLEGATIONS AND FACTS PLEAD IN THE THIRD PARTY COMPLAINT ARE INTERTWINED WITH ALL THE CAUSES OF ACTIONS

## RAISED BY DESAI. THE THIRD PARTY COMPLAINTS HAVE NOT BEEN ANSWERED AND THE MOTION FOR A JUDGMENT ON THE PLEADINGS IS PREMATURE

Yet, many other facts raised in Ms. Desai's third party complaint are still outstanding and must be considered as true. She has alleged facts that Subway Real Estate Corp., Yogesh Dave and Subway Development Co. are liable to her in various counts for damages. She alleges that the entities and Yogesh Dave breached their covenant of "good faith" in their business dealings with her and "engaged in deceptive practices" against her. (Third party complaint paragraphs 9 and 10, filed document 54). Some of those practices involved the opening of stores in close proximity to hers (paragraph 11), the plans of the named third party defendants to open those stores prior to the signing of the franchise agreements and yet not advising Ms. Desai of same (paragraph 12), failing to assist Ms. Desai in terms of analyzing the locations of her stores to ensure profitability (paragraph 13), failure to obtain market prices for her rentals (paragraph 16), who may arbitrate and who may file actions in court (paragraphs 18, 19 and 20), actions by Yogesh Dave in direct competition with Ms. Desai's franchises (paragraphs 33, 34, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54 and 55), and many factual statements of harassment by the said defendants. (filed document 54) The third party complaint contains many counts for relief for various theories from fraud and misrepresentation, to breach of a covenant of good faith, a violation of the New Jersey Franchises Practices Act, N.J.S.A. 56:10-5, signing the franchise agreements under duress, unfair trade practices, interference with economic advantage and may others. Third party defendants, Subway Real Estate Corp, Yogesh Dave, Subway Development Co. have not offered any answer to dispute the facts or

26

allegations of Jesal Desai.    How can a motion for judgment on the pleadings succeed when the third party defendants have not even answered the pleadings?   Mr. Turkish has not entered an appearance on behalf of Mr. Yogesh Dave or Subway Development Co. to make a motion as their representative.  In fact, Ms. Desai is entitled to move for an entry of default for the failure of the third party defendants to answer and obtain a judgment against them.

## POINT 4

### THE ACTIONS AND CLAUSES OF THE FRANCHISE AGREEMENTS BETWEEN DOCTOR'S ASSOCIATES, INC. AND JESAL DESAI VIOLATE THE PROVISIONS OF NEW JERSEY FRANCHISE PRACTICES ACT

Finally, for all of the reasons that render the arbitration clause and many other clauses of the franchise agreement unconscionable, they also violate the New Jersey Franchises Practices Act, N.J.S.A. 56-10-5.  The New Jersey Franchises Practices Act regulates both the ongoing franchise relationship and its termination.  Westfield Centre Service, Inc. v. Cities Service Oil Co., 86 N.J. 453 (1981).  Pursuant to N.J.S.A. 56:10-5, it is a violation of the act to "cancel or fail to renew a franchise without good cause." Good cause is "limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise."  A franchisee must first be given written notice of the reasons for the cancellation at least 60 days in advance of such termination.

First, Doctor's Associates did not give 60 days notice in advance of its alleged termination.  Second, Doctor's Associates, Inc. terminated her franchises because of the results of several audits, errors about the correct amount of attorney fees, costs and related items to send to Doctor's Associates, Inc., cancelled certified checks and other

27

minor items.  Ms. Desai in her certifications explained and offered proof as to why the audits are erroneous, how Doctor's Associates computations and demands have been wrong in the past and why she did not violate her franchise agreements when the banks certified checks were refused.  (certification of Desai, filed document 21-4 and 25-4, 54-4)

Ms. Desai has good and sufficient facts and reasons plead that the above mentioned reasons to terminate her franchises are void and that the previously mentioned unconscionable provisions of the franchise agreement together with her statements refuting the alleged reasons for a termination of her franchise agreements amount to an attempted termination of her franchise agreements without "good cause".  In effect, the alleged terminations are void, against the Franchise Practices Act and can not be used as a basis for an arbitration award.

### POINT 5

### DAI CAN'T SEEK POST BANKRUPTCY
### MONETARY JUDGEMENT & RECOVERY

The defendant, Jesal Patwari, filed a petition in Bankruptcy in the United States Bankruptcy Court, District of New Jersey, Case No: 08-26178 NLW. (filed document 54-4, Exhibit "A"). The bankruptcy court lifted the stay only for limited purpose to resolve the issues underlying the debtor's dispute with DAI.

The debtor filed a petition and schedules.  In schedule F – Creditors Holding Unsecured Non Priority Claims it listed Doctors Associates, Inc. and Subway Real Estate Corp. as creditors.  The debts were listed as disputed.  In schedule G – Executory Contracts and Unexpired Leases, the debtor listed Doctors Associates, Inc. and Subway Real Estate Corp. as parties to executory franchise agreements and real estate leases.  The

28

debtor listed the litigation in the 3d Circuit Court of Appeal: Case No. 08-3506 and the District Court consolidated cases under CV-083902 (PGS) and 08-3363 (WJM) in her rider to the Statement of Financial Affairs. The district court case, #08-3363 (WJM-MF) was filed on July 8, 2008, and the consolidated state case, docket no. # 08-3902 was filed in October of 2007. All of the claims made by the two creditors in their lawsuits were made antecedent to the filing of Ms. Patwari's bankruptcy petition.

Pursuant to 11 U.S.C. Chapter 5, Section 501, neither Doctor's Associates, Inc. or Subway Real Estate Corp., has filed a proof of claim or proof of interest. Neither creditor has filed an exception to discharge under 11 U.S.C., Chapter 5, section 523. If the debtor cannot propose a chapter 11 plan that will be approved by her creditors and the court, she will convert her Chapter 11 bankruptcy into a Chapter 7 bankruptcy. Pursuant to 11 U.S.C. Chapter 7, section 727 (b), "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title." (certification of Desai)

The plaintiff, Doctor's Associates, Inc. in docket No: 08-3363 (WJM-MF) filed a complaint for relief for an injunction, judgment, confirmation of arbitration awards, treble damages, attorney fees, and a vacation of the preliminary injunction entered by Judge Levy on February 26, 2008. Doctor's Associates by motion on the pleadings listed each of the debtors' stores and has made a claim for royalties, advertising fees, arbitration fees,

29

interest, attorney fees and a daily $250.00 dollar fee.   Doctor's Associates, Inc. total

demand for damages is $465,988.82 and with punitive damages close to 2 million dollars.

(see certifications of Tricia Lee and Forrest S. Turkish)

It is improper for the creditor, Doctor's Associates, Inc. and Subway Real Estate

Corp. to force Ms. Patwari to litigate post bankruptcy filing debts that are listed in her

bankruptcy petition and are going to be discharged, one way or the other, by her

bankruptcy petition.   The two creditor's actions were taken in bad faith and are a

violation of 11 U.S.C.

## POINT 6

## DISCOVERY IS NOT YET COMPLETE AND THERE ARE DISPUTED FACTS THAT PROHIBIT A SUMMARY JUDGMENT

While DAI did not characterize its cross motion as a motion for summary

judgment, the relief it is seeking, if granted, will be equivalent to a summary judgment.

The standard of review to be applied by the court in a summary judgment motion is very

different than a motion for a request for judgment on the pleadings.   Horizon Healthcare

Services, Inc. v. Allied National Inc., 2007 U.S. Dist. LEXIS 26352 (Dist. N.J. 2007).   In

the case Lucey v. Fedex Ground Package Systems, 2007 U.S. Dist. LEXIS 77454 (Dist.

Ct. N.J. 2007), the court outlined the standards for a summary judgment:

"A summary judgment shall be granted if there in no genuine issue as to any material fact the moving party is entitled to a judgment as a matter of law." (citations omitted).   A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party. (citations omitted).   A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.   Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.   "In making this determination, a court must make all reasonable inferences in favor of the non-movant. (citations omitted).   At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. (citation omitted)."  Id. at 8-10.

In order to determine a summary judgment motion, the court is required to render a decision pursuant to Rule 56 (c) if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The third party defendants have not even filed an answer yet. Interrogatories have not been exchanged between the parties and depositions held. Among other facts, Desai believes she will uncover facts from DAI that it never negotiates its franchise agreements and its terms must be accepted as is without any changes. She believes that by their very own words, she will obtain admissions of facts that support her legal theories. There are factual disputes over DAI's audits, its reasons to terminate Desai's franchise agreements, its location of competition Subway stores, its failure to provide services pursuant to the franchise agreements, waiver of terms and conditions of the franchise agreements, royalty and advertising payments due, attorney fees due, arbitration fees and so on. (Please see various certifications submitted by Desai outlining these disputes, documents filed with the court earlier, filings 21-4, 25-4, 35 and 54-4, made part of Desai opposition by reference).

## POINT 7

### (a)

### DAI HAS FAILED TO ADVANCE A LEGAL THEORY BASED UPON WHICH THE STATE COURT INJUNCTION COULD BE VACATED

The state court issued a preliminary injunction against DAI on February 26, 2008. (Exhibit "G", attached to Certification of Desai, filed earlier as document number 54-4, included herein by reference). The order prohibited DAI from using the arbitration

31

awards in any other proceeding and preserving the "status quo" until trial.  DAI did not

move to re-consider the order or appeal it.  Judge Levy made certain findings of fact and

law (See decision of Judge Levy of February 1, 2008, attached to the Certification of

Desai submitted earlier as document 54-4 as Exhibit "C").  Those findings of fact and

conclusions of law were made after the parties argued the issues to a great extent.  DAI

has not offered any proof that any facts have changed since Judge Levy's order.  DAI has

not offered any reason as to why Judge Levy's order should be changed except that the

Federal Arbitration Act prohibits the court from deciding in the first instance if

arbitration agreement is unconscionable.  Desai has already cited to the Arbitration Act

itself as well as federal and state cases that DAI'S arguments are void and contrary to

law.  DAI has not cited any case or statute that permits the court to modify or vacate

Judge Levy's order.  Even though res judicita and collateral estoppel would not attach

because the issues litigated before Judge Levy were not final, his order reflects a decision

based upon a through review of the issues presented by the parties and counsel, that

should not be modified except upon a showing of changed circumstances.

## ("b")

## DAI HAS UNCLEAN HANDS AND HAS VIOLATED THE STATE COURT
## ORDER

A preliminary injunction is an equitable remedy. Now DAI seeks to dissolve a

state court injunction which was issued to prevent harm to the business of Desai. As of

today, due to actions of DAI in violation of the state court order that extended protection

to Desai, all of Desai's stores are closed and she is out of business and in the bankruptcy

court. DAI manipulated the court system and engaged in significant forum shopping to

achieve its objective of destroying Desai and accomplished the same at the same time when a state court order prohibited disturbance to the business. DAI has unclean hands and cannot be permitted to be befitted from its wrongdoing.

**("c")**

**DAI IS PROHIBITTED FROM USING THE ARBITRATION AWARDS AS
EVIDENCE AND IS PROCEEDNG TO DO SO IN VIOLATION AND IN
CONTEMPT OF A VALID AND EXISTING COURT ORDER**

DAI is advancing its motions based upon the key evidence; that is, arbitration awards. The state court order is still in full force and effect and prohibits DAI form using the arbitration awards as evidence in a pending proceeding. DAI seeks to dismiss the cases that were filed in the State Court and were removed to this court which are currently pending. It is a clear violation and contempt of an existing court order. DAI cannot be permitted to violate a court order to such an extent. These actions of DAI and its counsels are contempt of an existing court order and should not be tolerated by this court.

**("d")**

**VIOLATION OF A DEBTOR'S RIGHT**

Desai is currently in bankruptcy process. (Exhibit, "A" to document 54-4, submitted earlier and included by reference). Franchise agreements form part of her assets and are subject to protection in the bankruptcy process. A debtor comes into the bankruptcy court with whatever rights or assets he/she had at the time of filing. The state court order that DAI seeks to modify was designed to protect this debtor's assets. Therefore, this order became a critical part of her assets as modifying the same. Therefore, this injunction cannot be dissolved without creating a conflict and possibly

33

violating bankruptcy laws. This order now forms part of Desai's assets as it existed on August 27, 2008, the date when Desai filed the bankruptcy petition. This cannot be dissolved or modified without taking away the assets which are protected in the bankruptcy process. DAI proceeded to seek a relief that clearly flies in the face of all the existing legal norms that apply to a debtor.

**("e")**

## BY STATUTE, CASE LAW AND PRINCIPLES OF FEDERALISM, THE FEDERAL COURT MUST ENFORCE A STATE COURT'S ORDER

In the case of <u>Arby's Inc. v. B & R Mngmt. & Leasing Corp.</u>, 2000 WL 1335753 (N.D.N.Y. 2000), the federal district court had to decide what effect it is required to give to a state temporary injunction that enjoined a franchisor from terminating the franchisees franchise agreement in a federal court action. The court cited the Anti-Injunction Act, 28 U.S.C. 2283, ("The Act") and noted the United States' unique dual federal and state system, examined a host of cases concerning the issue and decided that it had to uphold the state court's order. Much like our case, the movant asked the federal court to decide that the franchises had been terminated and to issue an injunction prohibiting the franchisee from using its service marks and trademarks. It alleged, like in our case, that the franchisee failed to pay its dues (royalties) and violated its franchise agreement.

The <u>Arby's</u> court said that the Act was enacted to minimize the inevitable conflict between federal and state courts and to allow them to coexist independently. The Act was intended to "prevent needless friction between state and federal courts". As in our case, the <u>Arby's</u> case settled how and why a conflict of orders must be resolved. The Act provides that "(a) court of the Untied States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where

34

necessary in aid of its jurisdiction, or to protect or effectuate its judgments." "The Act "imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions." As in Arby's, none of those exceptions apply here for the same reasons mentioned in Arby's. The court noted that the prohibition against state court proceedings is comprehensive and said:

> "It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. It applies to appellate as well as to original proceedings; and is independent of the doctrine of res judicita. It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective. The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or is some other." *Id.*

DAI requests that this court vacate an order of the state court. The state court case has been consolidated with the federal court case. If this court modifies or vacates Judge Levy's order, while it will not be enjoining a pending state court action, it will be modifying or vacating a final order that was effective until trial based upon an extensive hearing between the parties. While the court may afford comity to the order, abstain, or not hear the arguments to change Judge Levy's order, more is required of the Act. The court must consider the removed, consolidated order as an order of this court and enforce it. The movant has not cited any statute, rule or case that gives this court the authority to modify a state court order under the Act or at all.

## POINT 8
## DESAI'S FAILURE TO PAY ROYALITEIS AND ADVERTISING FEES ARE NOT PART OF DAI'S ARBITRATION AWARDS AND DAI HAS WAIVED OR MAY BE ESTOPPED FROM RELYING UPON THAT LACK OF PAYMENT OF ROYALITIES TO CANCEL HER FRANCHISES

In Arby's, like the case at bar, the movant alleged that the franchisee failed to pay monies required by the franchise agreement. It alleged foul play in the payment of fees to a cooperative, that Arby's, like DAI in our case, was aware of alleged oppressive and illegal actions and that Arby's, like DAI, failed to assist Desai and lacked good faith in terminating the franchises and that Arby's was barred from relief. The defenses raised by the franchisee prohibited Arby's from obtaining a judgment. The defenses and claims of Desai like the Arby's case, prohibit DAI from obtaining a judgment absent trial.

Moreover, DAI's arbitration awards were rendered on or about September 5, 2007 before Judge Levy's order on February 26, 2008 and before Desai owed any royalty fees to DAI. In as much as DAI did not give notice of the alleged default under the arbitration agreements or in as much as that issue has not been arbitrated, DAI has not raised the issue as provided by the arbitration agreement, the New Jersey Franchise Practices Act and has no basis upon which to terminate Desai's franchise agreements for that reason.

Furthermore, As cited in Desai certifications filed with the court, DAI would not accept any royalty payments from the day Judge Levy entered his order until the present time. Desai did everything she could to comply with the franchise agreement to pay her royalties on time. She even offered to pay the royalties through this court. (see certification of Desai, submitted in support of her motion for reconsideration, filed document number 25-4). Desai asserts the defenses of laches and acquiescence and equitable and judicial estoppel to DAI's claims that her royalties were not paid on time. Discovery is not complete.

Laches applies where a party has unreasonably delayed in asserting his rights against another party and the first party has relied in good faith on this delay to his

prejudice. Acquiescence occurs where a party's reliance is based on the plaintiff's active consent. The elements of a laches defense are:

1. plaintiff had knowledge of defendant's use;

2. plaintiff inexcusably delayed in taking action; and

3. defendant will be prejudiced if plaintiff is now permitted to assert his rights.

Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1040 (2d Cir. 1980) (quoting Cuban Cigar Brands, N.V. v. Upmann Int'l, Inc., 457 F. Supp. 1090, 1096 (S.D.N.Y. 1978), aff'd, 607 F.2d 995 (2d Cir. 1979).

Judge Levy ordered the parties to maintain the status quo. He prohibited the use of DAI's arbitration awards as evidence on February 26, 2008. That order was intended to be effective until trial. From the date of his decision on February 1, 2008 until this court's injunction of August 12, 2008, DAI had knowledge of Desai's use of their service marks and trademarks. In fact, pursuant to Judge Levy's order, DAI supplied Desai with food, other supplies, credit transactions, inspected her premises and otherwise complied with the franchise agreements. It is bizarre that DAI refused to accept Desai's advertising and royalty payments no matter she begged DAI to accept same. DAI did not move to re-argue or appeal Judge Levy's order. It acquiesced and did not take any action against Desai operating her Subway stores at least for 10 months. Desai relied upon Judge Levy's order and DAI's failure to challenge Judge Levy's order and DAI's refusal to collect advertising fees and royalties in balancing her books and operating her stores. DAI acquiesced in Desai's use of its service marks and trademarks. Kellogg Co. v. Exxon Corp., 209 F.3d 562, 569 (6th Cir. 2000), quoted in Creative Gifts, Inc. v. UFO, 235 F.3d 540, 547-548 (10th Cir. 2000).

37

DAI is also equitably estopped from now asserting that it is owed advertising and royalty fees because it is reversing itself now that it is to its advantage to assert that Desai's advertising fees and royalties are unpaid.  As the court said in <u>Holly Citrus Growers' Ass'n v. Holly Hill Fruit Prods., Inc.</u> 75 F.2d 13, 17 (5th Cir. 1935):

> "There is a kind of evidential estoppel which, though it may not amount to a complete estoppel in pais, is raised when persons who have spoken or acted one way under one set of circumstances, and with one objective in mind, undertake under other circumstances and when their objective has changed, to testimonially give a different color to what they formerly said and did.  We think that principle applies here."

Either in equitable or judicial estoppel, DAI is using its refusal to accept fees as a means of obtaining an unfair advantage in a forum designed for "suitors seeking justice" and is "playing fast and loose with the courts".  <u>Scarano v. Cent. R. Co.</u>, 203 F.2d 510, 513 (3d Cir. 1953).  Desai relied upon Judge Levy's order and DAI's refusal to accept fees in good faith and its failure to accept Desai's proposal to pay the fees over time which was made at the time of the Order to Show Cause in federal court, amounts to bad faith.  DAI breached its covenant of good faith and fair dealing and covenant to act fairly under the contract by refusing to accept payments from Desai.  A covenant of good faith and fair dealing and a covenant not to do anything to frustrate the performance of the contract or achievement of its objectives are implied in every contract.  <u>Bak-A-Lum v. Alcoa Building Products, Inc.</u> 69 N.J. 123, 129-30 (1976): <u>Association Group Life, Inc. v. Catholic War Veterans</u>, 61 N.J. 150, 153 (1972).

## **POINT 9**

### **DESAI DID NOT INFRINGE OR FALSELY ADVERTISE AND DAI DID NOT SUSTAIN ANY ACTUAL DAMAGES UNDER THE TRADEMARK OR LANHAM ACT.**

Desai operated her franchises pursuant to Judge Levy's decision and Order in February 2008 by maintaining the "status quo" until trial. His order was not re-argued or appealed. It was final until trial. DAI obtained an injunction on August 12, 2008, in federal court requiring Desai to stop using DAI's service and trademarks. DAI alleged that Desai continued to use its service marks and trademarks in violation of the court's order and made a motion for contempt. The court heard the motion and found that DAI did not sustain any damages and just awarded DAI the attorney fees and costs of making the contempt motion. DAI's exclusive remedy for a violation of the court's order was for contempt. Those damages have been decided by the court. The order has res judicita and collateral estoppel effect.

Desai's use of DAI's service and trademarks was not opposed by DAI until the federal court matter. They supplied Desai with food, supplies, management, etc. and inspected her stores. Despite the fact they inspected Ms. Desai's stores many number of times, they did not cite her for not operating her Subway stores in compliance with her franchise agreements. They suffered no harm. They themselves refused to accept any royalty and advertising payments. The damages they are seeking are not at all related to infringement or false advertising. They are claiming damages that arose from the operation of Ms. Desai's franchises before and after Judge Levy's order operating the franchises according to the "status quo". Desai did not deliberately trade on DAI's mark infringing on their mark. DAI did not loose any sales or is their a need to deter infringement. DAI has not claim for lost profit because of infringement. Banff Ltd. v. Colberts, Inc., 996 F.2d 33 (2d Cir. 1993), cert. denied, 510 U.S. 1010 (1993); Frisch Rests. , Inc. v. Elby's Big Boy, 849 F.2d 1012, 1015 (6th Cir. 1988); Monsanto Chem.

Co. v. Perfect Fit Prods. Mfg. Co., 349 F.2d 389, 397 (2d Cir. 1965), cert. denied, 383

U.S. 942 (1966); Estate of Bishop v. Equinox Int'l Corp., 256 F.3d 1050, 1057 (10th Cir.

2001), cert. denied, 534 U.S. 1130 (2002).

DAI has already received its actual damages for Desai's contempt for the time it

took her to close her stores and remove DAI's signs.  It did not sustain any actual

damages for a violation of section 43(a).  Desai never operated her Subway stores with an

intent to deceive or confuse the public that she was an authorized Subway franchisee.

She stopped using DAI's service marks and trademarks as soon as possible after the

federal court order injunction was entered.  In fact DAI is not suing her for damages for

fees because she illegally used their marks but because she legally used the marks and

owes them fees.

The amount of actual sales and fees due are disputed.  The actual damage to DAI

is slight or non-existent.  The damages must be related to infringement.  Champion Spark

Plug Co. v. Sanders, 331 U.S. 125, 131-32 (1947); Elecs. Corp. of Am. v. Honeywell,

Inc., 358 F. Supp. 1230, 1234 (D. Mass.), aff'd, 487 F.2d 513 (1st Cir. 1973), cert.

denied, 415 U.S. 960 (1974).  Any claims for damages cannot be based upon speculation

or feelings.  Some actual amount of damages must be proven related to an infringement.

Caesars World, Inc. v. Venus Lounge, Inc., 520 F.3d 269, 273 (3d Cir. 1975).  As noted

in the Zazu case, in calculating damages, "(u)sing a percentage of some number unrelated

to the plaintiff's injury is an unacceptable way to estimate damages ... ."  Zazu Designs

v. L'Oreal, S.A., 979 F.2d 499, 506 (7th Cir. 1992).

DAI has also asked the court to increase the award of "**actual damages**"

(emphasis added) to an amount "not exceeding three times" such damages under the

Lanham Act (15 U.S.C. 1117 (a)) according to the circumstances of the case. DAI has not sustained any damages for a violation related to the Lanham Act. What DAI is really asking is that the court imposes a penalty upon Desai. Increased damages "shall constitute compensation and not a penalty." _Id._ While increased damages may not be used as a penalty it may be used to deter willful infringement. Holiday Inns, Inc. v. Airport Holiday Corp., 493 F. Supp. 1025, 1028 (N.D. Tex. 1980), aff'd, 683 F.2d 931, 933 (5th Cir. 1982). But there is no willful infringement in this case to deter. There is no reason for the court to up a claim based on little or non-existent damages.

Punitive damages are not mentioned in the Lanham Act and the courts have held they are not recoverable under that statute. _Metric & Multistandard Components Corp. v. Metric's, Inc.,_ 635 F.2d 710, 715 (8th Cir. 1980); _Caesars World, Inc. v. Venus Lounge, Inc.,_ 520 F.2d 269, 274 (3d Cir. 1975).

The Lanham Act provides that the court may award reasonable attorney fees to the prevailing party in "exceptional cases". 15 U.S.C. 1117 (a). The prevailing party must prove that Desai acted "maliciously, fraudently, deliberately, or willfully." Watec Co., Ltd. v. Liu, 403 F.3d 645, 656 (9th Cir. 2005) (determination that case is "exceptional" is a question for the court). The opposite is true. Desai operated her Subway franchises pursuant to Judge Levy's order without any objection from DAI until they filed the federal court action. Nothing is very exceptional about this case. Desai's use of DAI's service marks and trademarks was in good faith and DAI's application for attorney fees is in bad faith and cannot be granted. Viola Sportswear, Inc. v. Minum, 574 F. Supp. 619, 621 (E.D.N.Y. 1983).

**POINT 10**

41

## THE FEDERAL RULES AND LOCAL RULES DO NOT SUPPORT DAI'S CROSS-MOITON AND IT IS REALLY A MOTION FOR SUMMARY JUDGMENT DEPRIVING THE NON MOVING PARTY OF AN ADEQUATE OPPORTUNITY TO ADDRESS THE HOST OF LEGAL ISSUES INVOLVED IN THIS CASE

DAI's cross motion can not be filed as a cross motion. Local Rule 7.1(h) lays the standards for a cross motion. It states:

"A cross motion related to the subject matter of the original motion may be filed by the party opposing the motion together with that party's opposition papers and may be noticed for disposition on the same day as the original motion, as long as the opposition papers are timely filed."

DAI's cross motion is to dismiss the entire case and is not related to the defendants'/consolidated plaintiffs' motion requesting referral of the pending matters to the bankruptcy court. DAI's cross motion contains (4) four non-related parts to the defendants' motion to refer the matter to bankruptcy court. The parts are (2) to vacate the preliminary injunction; (3) to dismiss all claims, counterclaims and third-party claims and (4) to enter judgment confirming the four arbitration awards, for treble damages and attorney fees and (5) for judgment in possession in favor of Subway Real Estate Corp. in all consolidated matters.

Furthermore, Rule 12 (d) states that if matters outside the pleadings are presented to the court, the motion "must be treated as one for summary judgment under Rule 56." The rule provides that "(a)ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Because the third-parties have not filed an answer, nor discovery has been completed, Desai is unable to present all the facts to the court at this time. DAI's motion is premature. Desai will learn many facts that are outside the pleadings through discovery and the answer to her third-party complaints.

May facts are presented outside the pleadings by certification. Instead of a trial, DAI is asking the court to decide disputed facts upon a battle of the certifications without discovery. DAI's cross motion is really a Rule 56 summary judgment motion. As such under local rule 7.1(d)(5) reads as follows:

"The motion day of the dispositive motion may be adjourned once by a party opposing the motion, without the consent of the moving party, the Court, or the Clerk."

By letter of November 6, 2008, I requested that pursuant to local rule 7.1(d) (5), the return date of the cross motion and response be carried to the next motion day. The court refused to carry the cross-motion and response and thus Desai has been prevented from submitting a better and adequate opposition. The pleadings are also not closed pursuant to Rule 12 (c). I refer the court to my letter of November 6, 2008 and incorporate it herein.

## POINT 11

### THE DISTRICT COURT SHOULD NOT RULE UPON LOCAL LANDLORD/TENANT STATE COURT REMOVAL ACTIONS

28 U.S.C.A. 1367 grants the district court supplemental jurisdiction over pendent state claims of which the district courts have original jurisdiction. Nevertheless, a federal court may decline to exercise supplemental jurisdiction over a claim for the reasons set forth in section (c). The state landlord/tenant claims should be sent back to the state court. The state court is uniquely situated to resolve those state related landlord/tenant claims. It is a compelling reason under (c) (4) to decline jurisdiction and refer the landlord/tenant cases back to state court. A landlord/tenant case is akin to a family law matter that by statute the district courts may not hear by supplemental jurisdiction. Civil Remedies for Gender-Motivated Violence Act, Pub. L. 103-332, 40302, 108 Stat. 1941 (1994). A state court only has the jurisdiction to issue a warrant of removal and other

formalities that a federal court does not have authority to do to remove a tenant from rented property. Further, there are issues of material fact, issues concerning the bankruptcy process, issues concerning an individual party Bhiku Patel who has not even filed an appearance. This matter is fraught with factual issues and cannot be decided on a skeleton motion advancing only claims for relief without articulating the legal and factual basis and convincing legal theory for entitlement.

## CONCLUSION

Based upon the above stated, it sis respectfully requested that DAI'S Cross Motion be dismissed with costs. The motions are clearly frivolous and disregard all the applicable law and the court rules.

The consolidated plaintiffs and defendants had very limited time to respond to a very fact sensitive motion which required great amount of research and analysis in a very short time period. The counsel for defendants/.consolidated plaintiffs apologize to the court in case there are any small errors in the submission.

Respectfully submitted,